**John GIANNOPOULOS,**
**Plaintiff–Appellant,**

v.

**BRACH & BROCK CONFECTIONS,**
**INC., an Illinois corporation,**
**Defendant–Appellee.**

No. 96–2230.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 10, 1997.

Decided March 26, 1997.

Glenn Seiden, Lawrence Edmund Sommers (argued), Seiden & Associates, Chicago, IL, for plaintiff–appellant.

Gregory J. Malovance, Joseph James Torres (argued), Winston & Strawn, Chicago, IL, for defendant–appellee.

Before POSNER, Chief Judge, and RIPPLE and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

John Giannopoulos lost his job with E.J. Brach Corporation[1] after Brach determined that he had punched another employee. Giannopoulos denies having thrown a punch, and he brought suit contending that Brach actually discharged him because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* The district court granted summary judgment in favor of Brach, finding that Giannopoulos had failed to identify evidence raising a question of fact as to the honesty of Brach's belief that Giannopoulos had punched his co-worker. We affirm.

## I.

Giannopoulos worked for E.J. Brach at its candy-making facility in Chicago for more than 25 years. From approximately 1978 through his termination, he held the post of union steward. At the time of his discharge, Giannopoulos was approximately fifty-three years old, and thus within the class of individuals forty years and older protected by the ADEA. Fellow Brach employee Michaelangelo Abbinanti, whom Giannopoulos was accused of punching, was thirty-five. Abbinanti knew Giannopoulos slightly, having worked with him once for several hours about a year and a half before the encounter that resulted in Giannopoulos' discharge. Abbinanti recalled that Giannopoulos had been difficult with him on that occasion, and he had reported this to his group leader.

On the afternoon of June 22, 1993, Giannopoulos completed his shift in the gum department, changed out of his work clothes, and walked outside the plant to his car in the employee parking lot. There he discovered another car, driven by Abbinanti, blocking his own car. At that time, the plant was operating at full employment (with some 2,200 hourly employees), so parking in the lot was at a premium. Second-shift workers like Abbinanti often had to wait for first-shift workers like Giannopoulos to leave before they could find an open space, and this is exactly what Abbinanti was doing.

Giannopoulos recalls that he sat in his car for a moment, allowing the summer heat to vent from the vehicle and waiting for Abbinanti to move. Ultimately he honked his horn and with a gesture indicated that Abbinanti should get out of the way. Abbinanti, according to Giannopoulos, inquired with a gesture which way Giannopoulos wanted to go. Then, when Giannopoulos indicated north, Abbinanti gave him the finger. He did, however, move his automobile. An angry Giannopoulos got out of his car and confronted Abbinanti. The two engaged in a

---

1. E.J. Brach later became Brach & Brock Confections, Inc. as the result of a merger with another company.

heated argument that culminated in Abbinanti's threat to call the police and with Giannopoulos' observation that Abbinanti obviously knew where Giannopoulos worked and could report him if he wished. Giannopoulos insists, however, that he never hit Abbinanti. Rather, he simply got into his car and drove home.

Abbinanti tells a different version. When he saw that Giannopoulos was preparing to leave the lot, Abbinanti inquired with a gesture in which direction Giannopoulos intended to steer his car. He received no answer, so Abbinanti simply moved his car out of the way and waited to take Giannopoulos' spot. Without explanation, however, Giannopoulos exited his car, walked up to Abbinanti's vehicle, and, through the open window, punched Abbinanti in the jaw. Professedly stunned, Abbinanti asked Giannopoulos what he had done that for. Giannopoulos purportedly answered that question with an obscene gesture and returned to his own car. Abbinanti got out of his car and shouted that he would report Giannopoulos. Giannopoulos told him to "go ahead" and drove away. Abbinanti copied down the license plate number of his car.

Abbinanti immediately reported the incident to Brach security personnel, and then visited the plant infirmary, where he was given a Tylenol and told to report for duty. Abbinanti had been unable to give security personnel Giannopoulos' full name, but while he was in the infirmary he was shown a photograph of Giannopoulos and confirmed that it was he who had struck him. Abbinanti also named Brach employee Louis Tirado as a witness to the incident.

John Klepper, then Brach's Labor Relations Manager,[2] was informed of the incident by a security employee and commenced an investigation. Within a day or two after the episode, he convened a meeting with Giannopoulos, Abbinanti, and Walter Rhodes, the business agent for the employees' union. After Giannopoulos and Abbinanti recounted their respective versions, Luis Tirado was summoned and, outside the presence of Giannopoulos and Abbinanti, told Klepper what he had seen.

Tirado was not acquainted with either man. On the day of the altercation, he had parked his car and was on his way into the plant for the second shift when his attention was drawn to the two men by the commotion. He saw Abbinanti sitting in his car and Giannopoulos standing at the driver's window. He witnessed Giannopoulos strike the other man with his fist and walk away. After hearing Tirado's account, Klepper terminated the meeting but kept looking into the matter.[3]

Giannopoulos subsequently referred Klepper to Vasilios Sarantopoulos, who had also witnessed the incident. Like Tirado, Sarantopoulos was on his way into the plant to work the second shift when the altercation took place. Sarantopoulos had seen both Giannopoulos and Abbinanti standing outside of their cars, shouting and gesturing at one another before Giannopoulos got into his car and drove out of the lot. He did not see any punch thrown.

Before concluding his investigation, Klepper also reviewed tapes from the security cameras in the parking lots and the written reports prepared by security and infirmary personnel who had spoken with Abbinanti immediately after the incident. Klepper could find no visual record of the encounter on the security tapes.[4]

Abbinanti had spoken to Security Sergeant M. Davis immediately after his encounter

2. Klepper later assumed the title of Director of Industrial Relations, although his responsibilities remained essentially unchanged.

3. During the meeting, Klepper noticed that one side of Abbinanti's face was red, a condition that Abbinanti attributed to Giannopoulos' fist. However, Abbinanti also acknowledged that he had recently had dental work done. Klepper attempted without success to ascertain exactly when the dental work was performed. Ultimately, he concluded that the dental work may have

accounted for the redness he observed on Abbinanti's face but that it did not otherwise rule out the possibility that Giannopoulos had struck him.

4. The security cameras operated on a continuous-loop taping system, with the result that previously recorded events would be taped over unless the tape was pulled fairly promptly. Klepper did not review the tapes until the day after the incident.

with Giannopoulos, and Davis had prepared a written report based on what Abbinanti told him had occurred. That report was consistent with the version Abbinanti had told Klepper himself. Davis had also spoken with Luis Tirado, who had, consistent with his subsequent statement to Klepper, indicated that Giannopoulos struck Abbinanti in the face. The nurse who had seen Abbinanti in the infirmary recorded a similar version of events.

Based on the evidence before him, Klepper concluded that Giannopoulos did punch Abbinanti in the face. In reaching that conclusion, he relied primarily on the eyewitness account given by Tirado, whom Klepper perceived to be an unbiased witness with no reason to lie. Although Sarantopoulos, the other bystander, had not seen Giannopoulos strike Abbinanti, Klepper concluded that his observations of the two combatants standing outside their cars yelling at one another were consistent with him having only seen the tail end of the encounter, after the punch was thrown.

Klepper concluded that both men should be disciplined. Although he was unable to determine who had initiated the argument, Klepper believed that Abbinanti had made an obscene gesture toward Giannopoulos and otherwise behaved improperly. But his behavior did not rise to the level of a dischargeable offense, in Klepper's view, and Klepper decided that a suspension and a "final warning" (meaning that any further disciplinary trouble would result in termination) constituted sufficient punishment. Klepper found Giannopoulos' behavior, on the other hand, to represent a dischargeable offense that could not be excused even if, as Klepper believed, Abbinanti had made an obscene gesture. In Klepper's view, striking a fellow employee on company premises was one of the most serious offenses that can occur in an industrial environment. Klepper decided to terminate Giannopoulos.[5]

Both men were notified of the discipline Klepper had decided to impose, and Giannopoulos filed a grievance protesting his dis-

charge. Klepper subsequently met with Giannopoulos and two union representatives to discuss the grievance. At that time, in view of Giannopoulous' years of service to the company, Klepper offered to allow Giannopoulos to retain his job if he would acknowledge having struck Abbinanti. Giannopoulos declined the offer, and with that the matter came to a close. The union did not seek to arbitrate the grievance, and Giannopoulos' employment with Brach ended.

Giannopoulos subsequently filed charges of age discrimination with the Illinois Department of Human Rights and the EEOC, and after the requisite period of time passed, he filed the instant suit in the district court. At the conclusion of discovery, Brach moved for summary judgment, contending that the undisputed facts before the court revealed that Giannopoulos was fired not because of his age but because he had struck a fellow employee. In compliance with the Northern District of Illinois' Local General Rule 12(M), Brach filed a detailed statement of the facts that it believed were undisputed. That statement outlined the course of Klepper's investigation, articulated the reasons why Klepper concluded that Giannopoulos had in fact struck Abbinanti and why discharge was the appropriate sanction for that act, and posited that age played no role in Klepper's decision to discharge Giannopoulos. R. 19 para. 54. In responding to the motion for summary judgment, Giannopoulos filed no statement in compliance with Local Rule 12(N) that contested the facts Brach had characterized as undisputed in its 12(M) statement or that set forth additional facts that Giannopoulos believed were undisputed. Consequently, when she addressed the motion, Judge Conlon deemed the facts set forth in Brach's Rule 12(M) statement to be admitted by Giannopoulos. Mem. Op. at 2 (citing, *inter alia, LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 389 (7th Cir.1995); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921–24 (7th Cir.1994)); see Local General Rule 12(N)(3)(b). Her analysis of the case did not turn on that point, however.

---

5. Klepper estimated that there had been between ten and twenty other incidents of one employee striking another since he had come to work for

Brach in 1990. To the best of his knowledge, every person who had thrown a punch had been discharged.

Instead, examining the case within the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Judge Conlon determined that even if Giannopoulos had succeeded in making out a prima facie case of discrimination, Brach had articulated a legitimate, non-discriminatory reason for his discharge and Giannopoulos had presented no evidence reasonably suggesting that this articulated reason was a pretext for discrimination. Mem. Op. at 17–20. Accordingly, she granted the motion for summary judgment.

## II.

We review the district court's decision to grant summary judgment de novo (*e.g., Sybron Transition Corp. v. Security Ins. Co. of Hartford,* 107 F.3d 1250, 1254 (7th Cir.1997)), construing the evidence and any inferences that reasonably may be drawn from it in the light most favorable to the party opposing summary judgment, in this case Giannopoulos (*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Once the party seeking summary judgment shows that there is no genuine issue of material fact requiring a trial, then the non-movant must identify specific evidence revealing that there is such an issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 796–97 (7th Cir.1995).

■ We have pointed out on a number of occasions that because employment discrimination cases often turn on questions of intent and credibility, courts in these cases must take care as they weigh summary judgment motions not to invade the province of the factfinder by attempting to resolve swearing contests and the like. *See, e.g., Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993); *Robinson v. PPG Indus., Inc.,* 23 F.3d 1159, 1162 (7th Cir.1994); *Perdomo v. Browner,* 67 F.3d 140, 144 (7th Cir.1995); *Bohac v. West,* 85 F.3d 306, 308–09 (7th Cir.1996). But we have also made clear that employment discrimination cases are not governed by a separate set of rules (*Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1396 (7th Cir.1997)), and that they remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts (*Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1312–13 (7th Cir.1989)). We agree that in this case, there was no genuine dispute of fact as to Brach's reasons for discharging Giannopoulos.

■ Faced with Brach's assertion that it had discharged Giannopoulos not because of his age but because he had assaulted a fellow employee, Giannopoulos had to identify some evidence reasonably calling into question the honesty of Brach's belief (really Klepper's belief, given that he was solely responsible for the decision to discharge Giannopoulos) that Giannopoulos actually had punched Abbinanti and that this misconduct merited discharge. Our cases make clear that we are not concerned with whether Brach's decision was right or wrong. As we have said, we do not sit as a kind of "super-personnel department" weighing the prudence of employment decisions made by firms charged with employment discrimination, *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988) (quoting *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987)); we are concerned solely with whether the reason for which the defendant discharged the plaintiff was discriminatory. *See Robinson,* 23 F.3d at 1164 (collecting cases); *see also Visser v. Packer Eng'g Assocs., Inc.,* 924 F.2d 655, 657 (7th Cir.1991) (en banc); *Meister v. Georgia–Pacific Corp.,* 43 F.3d 1154, 1162 (7th Cir.1995); *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1145 (7th Cir.1994); *cf. Courtney v. Biosound, Inc.,* 42 F.3d 414, 422–23 (7th Cir.1994) (summary judgment improper where question of

fact raised as to the believability, not necessarily the propriety, of employer's rationale for discharge). Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination. In this case, then, the pertinent question is not whether Klepper was right to believe that Giannopoulos struck Abbinanti and that as a result Giannopoulos should be discharged, but whether his belief that this was so was genuine or whether this rationale is merely a pretext for age discrimination.

■ Giannopoulos points to nothing in the record that reasonably calls into question the honesty of Klepper's professed belief that Giannopoulos punched Abbinanti and that he should be discharged for that reason. Principally, his argument is that because Klepper alone was responsible for investigating the altercation between Giannopoulos and Abbinanti and for the decision to discharge Giannopoulos, a jury ought to have the opportunity to assess Klepper's credibility and to determine whether his account of the rationale for Giannopoulos' discharge is indeed honest. Given the opportunity to look Klepper in the eye and see how well he holds up on cross-examination, Giannopoulos reasons, a jury might decide that Klepper is not telling the truth and that the real reason for Giannopoulos' discharge is the one Giannopoulos posits—his age. We previously have rejected this very argument. See *Futrell v. J.I. Case*, 38 F.3d 342, 346 (7th Cir. 1994); *Perfetti v. First Nat'l Bank of Chicago*, 950 F.2d 449, 452 (7th Cir.1991), *cert. denied*, 505 U.S. 1205, 112 S.Ct. 2995, 120 L.Ed.2d 871 (1992); *see also Aungst v. Westinghouse Elec. Corp.*, 937 F.2d 1216, 1221–23 (7th Cir.1991), *overruled in part on other grounds, Oxman v. WLS–TV*, 12 F.3d 652, 657 (7th Cir.1993). As these cases make plain, Giannopoulos cannot avoid summary judgment with an unadorned claim that a jury might not believe Brach's explanation for his termination; he must point to evidence suggesting that Brach itself did not honestly believe that explanation. As we explained in *Futrell*, "If the evidence does not amply support plaintiff's claim that the defendant's explanation is unworthy of credence, judgment as a matter of law is entirely appropriate." 38 F.3d at 346.

In his effort to demonstrate that a trial is required, Giannopoulos points to several circumstances surrounding Klepper's investigation and decision to discharge Giannopoulos that he believes a jury might find pertinent in judging Klepper's credibility. These do not serve to create a question of fact as to whether Brach's version of events is worthy of belief, however. For example, Giannopoulos represents that at his deposition, Klepper "had no memory of what documents he reviewed" in his investigation, but later, "after careful preparation," he was able to identify in his affidavit a variety of documents that he reviewed and relied upon in finding that Giannopoulos hit Abbinanti. Giannopoulos Br. 18. In fact, however, Klepper expressly noted at his deposition that he reviewed both the security report and the nurse's report in the course of his investigation. Klepper Dep. 46, 61–65. Giannopoulos also notes that Klepper was unable to recall at his deposition the name of eyewitness Vasilios Sarantopoulos or to describe what Sarantopoulos looked like. (Klepper did recall the substance of Sarantopoulos' statement and why he believed it did not exonerate Giannopoulos.) But these faults in Klepper's memory are hardly surprising two and one-half years after the fact, and although Giannopoulos suggests that a jury should be permitted to hear Klepper explain why he discounted Sarantopoulos' representation that he did not see Giannopoulos hit Abbinanti, Klepper's affidavit explains his rationale in that regard, and Giannopoulos again points to no evidence suggesting that Klepper, even if he may have erred in this respect, did not genuinely believe his own explanation. Finally, Giannopoulos suggests that because Klepper offered to let Giannopoulos remain on the job if he would admit to having struck Abbinanti, there is some question as to whether Klepper (and Brach) honestly believed that discharge was an appropriate step. But as we pointed out at oral argument, an offer of leniency in exchange for an accused's acceptance of responsibility is hardly enough to raise an eyebrow. Klepper's offer reflects a principle

that sentencing judges honor daily—that one who confesses to the wrong he has been found to have committed has taken the first step toward rehabilitation and thus is deserving of lesser punishment. Without more, the refused offer does not call into question Klepper's credibility.

■ We have been more than generous in even considering these circumstances. When he failed to respond to Brach's Rule 12(M) statement, Giannopoulos conceded the truth of all properly supported factual aversions in that statement, as Rule 12(N)(3)(b) provides. *See, e.g., Best v. Shell Oil Co.,* 107 F.3d 544, 547–48 (7th Cir.1997); *Knoblauch v. DEF Express Corp.,* 86 F.3d 684, 690 (7th Cir.1996); *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1316 (7th Cir.1995); *Waldridge,* 24 F.3d at 921–24. Brach's 12(M) statement sets out in detail the steps Klepper took in investigating the incident, the witnesses with whom he spoke, the documents that he reviewed, the thought process he followed in concluding that Giannopoulos struck Abbinanti, and the reason that he believed discharge was an appropriate sanction for Giannopoulos. These averments portray an evaluation untainted by any considerations of age; and, indeed, the 12(M) statement represents, consistent with Klepper's affidavit, that Klepper did not take age into consideration at all in his decision to discharge Giannopoulos. R. 19 para. 54. In opting not to respond to Brach's statement of the facts and thus to admit that these facts were undisputed, as Brach portrayed them to be, Giannopoulos effectively conceded away any factual underpinning that his case might have had. *See Waldridge,* 24 F.3d at 922–23.

■ Under these circumstances, Giannopoulos has no reasonable basis on which to argue that the district court committed error of any kind in granting Brach's motion for summary judgment. His contention that a genuine dispute of fact exists as to the veracity of Klepper's explanation for his discharge is belied by the lack of any evidence reasonably calling into the question the honesty of Klepper's belief that Giannopoulos had assaulted a fellow employee, Giannopoulos' effective confession that Klepper's decision to discharge him was untainted by consideration of his age, and by our observation in *Futrell* and *Perfetti* that a plaintiff cannot avoid judgment as a matter of law simply because a jury might not believe the defendant's properly supported account of events. After reviewing his opening brief, Brach invited Giannopoulos to withdraw this appeal, warning him that it considered the appeal frivolous under the governing case law and would seek sanctions if forced to respond. Its request was met with silence. We agree with Brach that Giannopoulos' briefs are characterized by a stubborn refusal even to acknowledge the long list of precedents that are directly contrary to the positions he has taken in this appeal. Circuit Rule 38 permits an award of costs to the appellee in the case of a frivolous appeal, which we have described as one "prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy." *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.,* 86 F.3d 96, 101 (7th Cir.1996) (internal quotation marks and citations omitted). After reviewing Judge Conlon's thorough opinion granting the motion for summary judgment and the cases cited in Brach's letter requesting withdrawal of the appeal, Giannopoulos could have had no reasonable expectation that he would prevail; his decision to proceed nonetheless can only be understood as "sheer obstinacy." We therefore reluctantly conclude that Rule 38 sanctions are appropriate, and direct Brach to submit an accounting of the costs it incurred in defending this appeal within fifteen days.

### III.

The district court's grant of summary judgment is

AFFIRMED.