Wieh George KUN, Plaintiff,

v.

BERKELEY COUNTY GOVERNMENT, Defendant.

C/A No. 2:00–0790–18RB.

United States District Court, D. South Carolina, Charleston Division.

Sept. 27, 2001.

Wieh George Kun, Moncks Corner, SC, pro se.

Harold Williams Funderburk, Jr., SC Employment Security Commission, Columbia, SC, for South Carolina Employment Security Commission.

Wilbur Eugene Johnson, Charleston, SC, Doyle Mark Stokes, N Charleston, SC, for Berkeley County Government.

## ORDER

NORTON, District Judge.

This matter is before the court on the magistrate judge's recommendation that defendant's Motion for Summary Judgment be granted. This record includes a Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1)(B).

### I. Time for Filing Objections

A party may object, in writing, to a magistrate judge's report within ten days after being served with a copy of that report. *See* 28 U.S.C. § 636(b)(1)(C) (1994). Three days are added to the ten day period if the Report and Recommendation is mailed rather than personally served. *See* Fed.R.Civ.P. 6(e). The magistrate judge filed his Report and Recommendation on July 13, 2001. Plaintiff filed his written objections on August 3, 2001.

### II. Review of Magistrate Judge's Report

■ This court is charged with conducting a *de novo* review of any portion of the magistrate judge's Report and Recommendation to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. *See* 28 U.S.C. § 636(b)(1)(C) (1994). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). This court is not required to review, under a *de novo* standard, or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. *See id.* at 149–50, 106 S.Ct. 466. A party's general objections are not sufficient to challenge a magistrate judge's findings. *See Howard v. Secretary of Health & Human Servs.,* 932 F.2d 505, 508–09 (6th Cir.1991). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber,* 423 U.S. 261, 270, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976).

### III. Summary Judgment Standard

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). If the moving party carries its burden of showing that there is an absence of evidence to support a claim, then the non-moving party must demonstrate by affidavit, depositions, answers to interrogatories, and admissions on file that there is a genuine issue of material fact for trial. *See Celotex Corp.,* 477 U.S. at 324–25, 106 S.Ct. 2548. An issue of fact is "genuine" when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit under the governing substantive law. *See id.* When determining whether there is an issue for trial, the court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Moore v. Winebrenner,* 927 F.2d 1312, 1313 (4th Cir. 1991).

## IV. Plaintiff's Objections

In his Complaint, plaintiff alleged discrimination, retaliation, harassment, and wrongful termination, all in violation of Title VII. The magistrate judge found that plaintiff had not established a prima facie case for any of his claims. In his Objections, plaintiff argues that he did establish a prima facie case for all of his claims and that he further showed that defendant's legitimate, non-discriminatory reasons are pretexts for discrimination. Each of plaintiff's objections will be addressed in turn.

## A. Discrimination on the Basis of Race and Sex

### 1. Vacation Days

■ Plaintiff first argues that he did establish a prima facie case of discrimination based on race and sex because, contrary to the magistrate judge's finding, he was not granted all of the vacation days that he initially requested. (Plaintiff's Objections at 2). According to plaintiff, his failure to receive all of the vacation days initially requested indicates discrimination.

The record shows that on October 2, 1998, plaintiff requested annual leave for December 22, 23, and 28, 1998. His leave request was approved by his supervisors. (Plaintiff's Memo. in Opp. to S.J. Exhibit A). However, plaintiff's leave request form was later voided and a note was written on the form stating that plaintiff should resubmit his request. (Plaintiff's Memo. in Opp. to S.J. Exhibit A). On October 7, 1998, Carole Grant, plaintiff's immediate supervisor, sent a memorandum to her employees in which she explained defendant's holiday leave requirements.[1] (Defendant's Memo. in Supp. of S.J. Exhibit 3). Pursuant to the leave policy, the employees were paired together and only one member of each pair could take leave at a time. (Defendant's Memo. in Supp. of S.J. Exhibit 3 at 1). Each employee was required to check with his or her partner

---

1. In the memorandum, Ms. Grant noted that she would be applying the same leave policy used in previous years. (Defendant's Memo. in Supp. of S.J. Exhibit 3 at 1). Although plaintiff claimed that he had been unaware of defendant's leave policy before the memorandum was sent out, he has not presented any evidence that the memorandum did not accurately reflect defendant's policy.

before requesting leave. Further, an employee could request leave either immediately before or after a holiday, but not both times. (Defendant's Memo. in Supp. of S.J. Exhibit 3 at 2). Finally, the memorandum established how conflicts between employees' schedules would be handled.

Looking at the facts in the light most favorable to plaintiff, it is undisputed that plaintiff's first leave request did not conform to defendant's leave policy. Plaintiff did not consult with Roberta Melton, the employee he was paired with, concerning her holiday leave, and he requested leave dates both before and after Christmas. (Plaintiff's Memo. in Opp. to S.J. Exhibit A). Plaintiff was asked to resubmit his leave request, and on October 29, 1998, he was granted leave for December 22 and 23, 1998. (Plaintiff's Memo. in Opp. to S.J. Exhibit A). In his Objections, plaintiff claimed that he was required to work on December 28, 1998, but was locked out of the building. (Plaintiff's Objections at 2). However, in his summary judgment memorandum, plaintiff admitted that December 28, 1998, was added as a county-wide holiday, and, although he did not have advance notice of the holiday, he was not required to work that day. (Plaintiff's Memo. in Opp. to S.J. at 22–23).

Looking at all of the evidence, plaintiff has not established that he was treated any differently than other employees with regard to obtaining annual leave. Although plaintiff claims that he was treated differently from Ms. Melton, he did not introduce evidence that Ms. Melton asked for and received holiday leave that conflicted with the leave guidelines set forth in Ms. Grant's memorandum. Further, because of the county holiday on December 28, plaintiff, in fact, received all of the leave days that he originally requested. At most, plaintiff seems unhappy that he was required to resubmit his request form and that he was required to work together with another employee in scheduling his leave. However, plaintiff's evidence is not sufficient to establish a prima facie case of discrimination.[2]

## 2. Sign–In/Out Board

■ Plaintiff also claims that the magistrate judge erred in concluding that he was not treated differently from other employees with regard to the use of the sign-in board. (Plaintiff's Objections at 12–13). However, because plaintiff has failed to show that defendant's requirement that he use the sign-in board was an adverse employment action, he has failed to establish a prima facie case of discrimination under Title VII.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C.A. § 2000e–2(a)(1) (West 2001). Based on this language, the Fourth Circuit .has found that a person claiming discrimination under Title VII must show that he

---

2. Plaintiff claims that defendant's statements in its summary judgment memorandum left many questions unanswered such as how much time passed before Ms. Grant realized that she had made a mistake in signing his first leave request form, on what date did she inform plaintiff that he needed to resubmit his request, and why had defendant not issued the leave policy earlier. (Plaintiff's Objections at 5). While the record does not set forth the exact dates of each event, the record is clear that some time between October 2, 1998, and October 29, 1998, plaintiff was informed of defendant's leave policy, that he was asked to resubmit his leave request, that he did, in fact, do so, and that he was granted holiday leave. Knowledge of the exact date that each event occurred would not add additional support to plaintiff's discrimination claim.

or she suffered an adverse employment action. *See Boone v. Goldin,* 178 F.3d 253, 256 (4th Cir.1999). The court noted that it was certain "that Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment. . . ." *Id.; see also Von Gunten v. Maryland,* 243 F.3d 858, 865 (4th Cir.2001).

In this case, plaintiff has failed to show that the terms, conditions, or benefits of his employment were affected by the requirement that he use a sign-in board to inform his supervisors of his whereabouts during the work day. Plaintiff has not alleged that, as a result of this requirement, he received less pay or fewer benefits or even that the requirement was especially onerous or humiliating. Further, plaintiff has not shown that he was subject to discipline when and if he failed to use the board. While plaintiff may have believed that use of the sign-in board was unnecessary or a hassle, he has not shown it to be an adverse employment action and has therefore not established a claim under Title VII.

Moreover, as the magistrate judge found, plaintiff has also failed to show that he was treated differently than other employees with regard to using the sign-in board. In his Objections, plaintiff stated that other employees in his department did not have their names on the board and were not required to sign in and out. (Plaintiff's Objections at 3). However, in his deposition, plaintiff admitted that other employees, apparently all of the computer programmers, had their names on the board. (Defendant's Memo. in Supp. of S.J. Exhibit 4 at 81, line 7–23; Plaintiff's Objections Exhibit A). Further, although plaintiff stated that he had never observed any of the other employees using the board, he admitted that he did not know

whether other employees were told that they did not need to use the board. (Defendant's Memo. in Supp. of S.J. Exhibit 4 at 82, 84). At most, plaintiff has shown that other employees may not have complied with the office policy of using the sign-in board; however, he has not presented any evidence that he was the only employee required to use the sign-in board. As a result, plaintiff has failed to establish a prima facie case of discrimination because he has failed to show that he was treated differently than other similarly situated employees.

**B. Retaliation**

 Plaintiff also claims that the magistrate judge erred in finding that he had not engaged in protected activity and therefore had not established a prima facie case of retaliation. In order to establish a prima facie case of retaliation, plaintiff must show (1) that he engaged in protected activity under Title VII; (2) that the employer thereafter took adverse employment action against him; and (3) a sufficient causal connection existed between his protected activity and the employer's adverse action. *See Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 754 (4th Cir.1996). Protected activity includes opposition to any practice made an unlawful employment practice under Title VII. *See* 42 U.S.C.A. § 2000e–3(a) (West 2001).

 Looking at the evidence in the light most favorable to plaintiff, he did complain of alleged discrimination in the workplace. Marie Wauben, the Director of Human Resources, stated that plaintiff had alleged discrimination several times during meetings she had with him.[3] (Defendant's Memo. in Supp. of S.J. Exhibit 7 at 2). Although it is unclear from the record

---

**3.** The record is clear, however, that plaintiff's written complaint against Ms. Grant did not

allege discrimination. (Defendant's Memo. in Supp. of S.J. Exhibit 4 at 105).

exactly when plaintiff made these allegations of discrimination, the last meeting between Ms. Wauben and plaintiff took place on January 12, 1999. (Defendant's Memo. in Supp. of S.J. Exhibit 7 at 2). By making these complaints to a supervisor, plaintiff engaged in protected activity. Further, the record indicates that subsequent to these complaints, on March 23, 1999, Ms. Grant took two disciplinary actions against plaintiff.[4] (Plaintiff's Memo. in Opp. to S.J. Exhibit O, 11). Plaintiff argues that because the disciplinary actions came after the discrimination complaints, he has shown a causal connection between the protected activity and the adverse employment actions.[5] (Plaintiff's Objections at 13–14). Aside from the temporal proximity, plaintiff has not offered any other evidence that the disciplinary actions were taken as a result of his complaints.

■ The Fourth Circuit has found that temporal proximity between protected activity and an adverse employment action is sufficient evidence to establish a causal connection between the protected action and the adverse employment action. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989); *see also Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir.1998) (finding that "[n]ormally, very little evidence of a causal connection is required to establish a prima facie case"). In *Williams*, the plaintiff argued that she was retaliated against in violation of Title VII when she was fired almost four months after she filed a discrimina-

tion claim with the state agency. *See* 871 F.2d at 454–55. The Fourth Circuit found that plaintiff had established a causal connection and had therefore established a prima facie case of discrimination. In this case, in the light most favorable to him, plaintiff has shown that an adverse employment action was taken against him approximately two months after he claimed discrimination. This evidence is sufficient to establish a casual connection between the adverse employment action and the protected activity, and therefore he has established a prima facie case of retaliation.

■ However, plaintiff cannot prevail on his retaliation claim because defendant proffered legitimate, non-discriminatory reasons for its disciplinary actions and plaintiff has failed to show pretext. In Ms. Grant's first disciplinary memorandum, she stated that plaintiff had refused to prepare a written explanation of an incident that occurred between plaintiff and a co-worker. (Plaintiff's Memo. in Opp. to S.J. Exhibit O). Further, Ms. Grant wrote that plaintiff had refused to adequately answer her questions about the incident. (Plaintiff's Memo. in Opp. to S.J. Exhibit O). In the second disciplinary memorandum, Ms. Grant wrote that plaintiff had been instructed three times to refer any Internet questions to the technical staff. Ms. Grant noted that plaintiff had once again failed to comply with these instructions. (Plaintiff's Memo. in Opp. to S.J. Exhibit 11). She also stated that the memorandum written by plaintiff to Judge

---

4. The record is not clear whether Ms. Grant knew of the verbal complaints of discrimination. However, the record does indicate that Ms. Grant attended the January 12, 1999, meeting with Ms. Wauben and plaintiff. (Defendant's Memo. in Supp. of S.J. Exhibit 7 at 2). Therefore, in the light most favorable to plaintiff, Ms. Grant had knowledge of the complaints.

5. In the light most favorable to plaintiff, these disciplinary actions were adverse employment actions because they were at least one reason for his termination. (Plaintiff's Memo. in Opp. to S.J. Exhibit H at 2).

Kirk was inappropriate. (Plaintiff's Memo. in Opp. to S.J. Exhibit 11).

 Once the defendant has proffered legitimate, non-discriminatory reasons for its actions, the plaintiff may establish pretext by showing that the reasons are false. *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In this case, plaintiff may establish pretext by showing that Ms. Grant's reasons for disciplining him are false or not the true reasons for the disciplinary actions. However, plaintiff cannot establish pretext by simply contesting the merits of the disciplinary actions. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir.2000).

While plaintiff attempted to justify his behavior, he did not provide evidence that Ms. Grant actually thought that he had handled both situations appropriately. Plaintiff's deposition testimony indicated that plaintiff did not provide either a written or verbal explanation of the incident that took place in the coroner's office, as requested by Ms. Grant.[6] (Defendant's Memo. in Supp. of S.J. Exhibit 4 at 88). Further, plaintiff has not disputed the fact that he sent Judge Kirk a memorandum informing him that he would be unable to provide the judge with Internet training. (Plaintiff's Memo. in Opp. to S.J. Exhibit 9). The undisputed evidence is that Ms. Grant believed, whether rightly or wrongly, that plaintiff had failed to follow her directions on two separate occasions and therefore merited disciplinary action.

**C. Hostile Work Environment**

 Plaintiff also claims that Ms. Grant's memorandum concerning visitors was harassment in response to his filing of a claim with the South Carolina Human Affairs Commission ("SCHAC"). Plaintiff claims that the magistrate judge erred in failing to consider his many reasons for requesting that the switchboard contact him when he had visitors instead of letting them go directly to his office.[7] (Plaintiff's Objections at 9). To establish a claim for a hostile work environment, plaintiff must show (1) unwelcome conduct; (2) based on plaintiff's race or gender; (3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment; and (4) some basis for imputing liability to the employer. *See Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 266 (4th Cir.2001).

---

6. In his deposition and Objections, plaintiff claimed that he could not comply with Ms. Grant's request because he did not know what incident she was referring to. (Defendant's Memo. in Supp. of S.J. Exhibit 4 at 88; Plaintiff's Objections at 9). The record shows that Ms. Grant wrote plaintiff a memorandum immediately after the alleged incident between plaintiff and a co-worker. In that memorandum, Ms. Grant stated that she had been contacted at 10:40 that morning by the coroner and told that there had been an incident in his office between plaintiff and another employee. The other employee had been so upset that the coroner could not determine what plaintiff had said. (Plaintiff's Memo. in Opp. to S.J. Exhibit O). The undisputed evidence is that plaintiff knew when and where the alleged incident took place, which other employees were involved, and that plaintiff was accused of making an inappropriate comment to a co-worker. This information was sufficient to allow plaintiff to respond as requested by Ms. Grant.

7. Plaintiff stated that the door to his department had a sign stating that only employees were allowed in that area. Further, in order to reach his work station, a visitor had to pass through a supervisor's office. Plaintiff stated that instead of having his visitor's wandering around the building looking for him, he preferred to have the switchboard simply contact him when a visitor arrived so he could go up front to meet his guest. (Plaintiff's Objections at 9–10).

While stating many reasons why he thought he should be contacted when he had visitors, plaintiff has not provided any evidence that defendant's policy concerning visitors was applied only to him because of his race or gender. The Fourth Circuit has consistently found that courts do "not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination. . . ." *De-Jarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir.1998) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir.1997)). As such, this court is not charged with determining whether defendant had reasonable policies or whether plaintiff had good reasons for asking the switchboard to call him when he had visitors. *See id.* This court must simply determine whether Ms. Grant's actions were harassment based on plaintiff's race or sex. Without evidence that he was treated differently than other employees with regard to the visitor policy, plaintiff cannot establish a prima facie case of a hostile work environment.

Further, even in the light most favorable to plaintiff, he cannot show harassment severe or pervasive enough to establish a hostile work environment. The Supreme Court has found that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The Fourth Circuit has found that in determining whether harassment is "sufficiently severe or pervasive to bring it within Title VII's purview, [the court] must examine the totality of the circumstances, including '[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere of-fensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Hopkins v. Baltimore Gas and Elec. Co.*, 77 F.3d 745, 753 (4th Cir.1996) (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367).

In this case, even if plaintiff could show that the visitor policy was applied to him because of his race or sex, defendant's conduct simply does not rise to the level of actionable harassment. In his deposition, plaintiff noted that he did not receive frequent visitors. (Defendant's Memo. in Supp. of S.J. Exhibit 4 at 115). Therefore, defendant's policy on personal visits would not have much of an affect on plaintiff's day to day working environment. Further, the only evidence of this "harassment" is one memorandum written by Ms. Grant. In this memorandum, all that Ms. Grant requested from plaintiff was that (1) he not make inappropriate requests to the switchboard personnel; (2) that his guests not be intoxicated; and (3) that he limit the number of guests that visit him while he is at work. (Plaintiff's Memo. in Opp. to S.J. Exhibit X). This is simply not the type of severe or widespread harassment that disrupts an employee's working environment and creates an objectively hostile work environment. Therefore, even in the light most favorable to plaintiff, he has failed to establish a prima facie case of harassment because he has failed to show (1) any unwanted conduct *based* on plaintiff's race or sex or (2) harassment severe or pervasive enough to affect the terms, conditions, or privileges of employment.

## D. Wrongful Termination

Finally, plaintiff claims that the magistrate judge erred in concluding that he had not engaged in protected activity and therefore had not established a claim for retaliatory discharge. In his summary judgment memorandum, plaintiff stated

that he had been fired because he had been arrested and also because he had received two disciplinary actions. (Plaintiff's Memo. in Opp. to S.J. at 5, 7–8). As noted above, plaintiff has not established that the disciplinary actions were taken in retaliation for plaintiff's allegations of discrimination. Therefore, even if the disciplinary actions were a basis for plaintiff's termination, plaintiff has not shown discrimination. Further, as the magistrate judge noted, because an arrest is not protected activity under Title VII, plaintiff has not established a prima facie case of retaliatory termination.

In his Objections, plaintiff alleges for the first time that he was terminated because he filed a complaint with the SCHAC alleging retaliation and discrimination. (Plaintiff's Objections at 16). However, plaintiff did not make this allegation in either his Complaint or summary judgment memorandum, and he may not change his allegations throughout the proceedings in order to survive summary judgment.[8]

## V. Conclusion

For the reasons stated above and those stated by the magistrate judge, it is therefore, **ORDERED** that defendant's Motion for Summary Judgment be **GRANTED**.

**AND IT IS SO ORDERED.**

---

**8.** Further, even if plaintiff had made this allegation previously, defendant offered a legitimate, non-discriminatory reason for plaintiff's termination—plaintiff's improper use of county equipment. (Plaintiff's Memo. in Opp. to S.J. Exhibit H). Plaintiff has attempted to explain why he should not have been terminated for using the county equipment for personal use. However, as noted above, this court does not sit as a judge of defendant's personnel decisions. The record indicates that plaintiff has had ample opportunity to contest his termination through county grievance procedures and through state court. (Plaintiff's Memo. in Opp. to S.J. Exhibit L, R). The only issue that this court must determine is whether the termination was a result of discrimination. Because plaintiff has not shown that defendant's legitimate, non-discriminatory reason was false or not the true reason for his termination, plaintiff has failed to show a retaliatory termination.