

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-2005

# Ramos v. Equiserve

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3979

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Ramos v. Equiserve" (2005). *2005 Decisions.* Paper 681.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/681

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 04-3979
_____

RICHARD RAMOS,

Appellant

v.

EQUISERVE & ADECCO NORTH AMERICA, LLC

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civ. No. 02-cv-01407)
District Judge: Honorable William J. Martini
_____

Submitted Under Third Circuit LAR 34.1(a)
April 1, 2005

Before: ROTH, MCKEE AND ALDISERT, CIRCUIT JUDGES

(Filed August 18, 1005  )

_____

OPINION

_____

PER CURIAM

Richard Ramos appeals from the order of the United States District Court for the

District of New Jersey granting the Appellees' motion for summary judgment and

dismissing this action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). The District Court also denied Ramos's motions to reopen discovery and to impose sanctions.

In 2002, Ramos brought this action under Title VII alleging that Adecco North America ("Adecco"), a temporary employment agency for whom Ramos had worked in Paramus and in Jersey City, New Jersey, and EquiServe, one of Adecco's clients for whom Ramos performed temporary services in their data collection department, unlawfully discriminated against Ramos on account of his race and national origin by discharging him from his temporary placement at EquiServe based on an FBI record of arrests.[1] He claims that after his discharge from EquiServe, Adecco further prevented him from seeking gainful employment through a memorandum it circulated to at least one potential employer stating that Ramos's employment with EquiServe ended due to a "tarnished" background investigation report.

The facts in this case tell a tale of poor communication. Ramos alleged that on or about February 14, 2001, EquiServe gave Adecco misleading information about an incomplete FBI record regarding Ramos's prior arrests that EquiServe received pursuant to a routine criminal background check.[2] The FBI record detailed arrests in 1991-1992

---

[1] Because neither Adecco nor EquiServe claim otherwise on appeal, we will assume that Adecco and EquiServe are "joint employers" under Title VII.

[2] Ramos had consented to the background check and had authorized the exchange of information about the background check between EquiServe and Adecco.

but did not include the fact that all of the charges were dismissed in 1992. Based on Ramos's arrest record, EquiServe determined that Ramos did not meet EquiServe's standards, and requested that Adecco remove Ramos from temporary assignment. In a meeting with Ramos, EquiServe's corporate security manager, Victor D'Amico, explained that Ramos would be permitted to return to EquiServe if he provided documentation indicating that the charges against him had been dismissed. D'Amico did not disclose the substance of his conversation with Ramos to Adecco. And Ramos did not tell Adecco either. Sometime after D'Amico's meeting with Ramos, Vanessa Turner, Adecco's site representative at EquiServe, escorted Ramos out of the building and told him to contact the Jersey City office the following day for help in obtaining another placement.

Ramos immediately applied for unemployment benefits and started to search for other jobs, including making daily contacts with Adecco. On February 26, 2001, Turner wrote a memorandum "to whom it may concern," indicating that Ramos was released from temporary service at EquiServe "due to a background investigation report that came back tarnished..." See Appellees' App., AA-45, ¶ 14. In late February or early March, Adecco contacted Ramos for a temporary assignment at AT&T, for whom Ramos had worked in October 2000 without incident. The AT&T job, however, was cancelled at the last minute.

Meanwhile, in Spring 2001, Ramos successfully procured documentation from the

3

Virginia courts demonstrating that all of the criminal charges for which he had been arrested were dismissed after a bench trial. He promptly communicated this information directly to D'Amico at EquiServe, but did not share the information with Adecco. A representative of EquiServe told Adecco Vice-President Acker that Ramos could return to work there. Acker then spoke with D'Amico, who declined to provide Acker with the reason EquiServe initially released Ramos or why they were now ready to take him back. Unbeknownst to Ramos, Acker told D'Amico that she would authorize Ramos's return to EquiServe only upon receipt of a written release from EquiServe. EquiServe never provided the written release to Adecco and Ramos was not re-assigned there.

Ramos claimed employment discrimination on account of his race and national origin, alleging that EquiServe used the higher incidence of arrests among men of color as a bar to employment and that Adecco prevented him from obtaining further employment. The Appellees moved for summary judgment, contending that Ramos failed to make out a prima facie case of employment discrimination, and even assuming that he had, Ramos failed to rebut the Appellees' contention that Ramos's positive criminal background check was a legitimate, non-discriminatory reason for his removal.

Upon consideration of the parties' written submissions, the District Court granted summary judgment for Adecco and EquiServe. First, the District Court ruled that Ramos failed to demonstrate through statistical or other competent evidence that EquiServe's reliance on FBI criminal history records to determine suitability for employment had a

4

disparate impact on minorities. Specifically, the District Court found that Ramos only alleged his own single instance of adverse impact, which was insufficient, without more, to show disparate impact under Title VII.

As for Ramos's claim of disparate treatment, the District Court found that although Ramos satisfied the first three prongs of the prima facie case for employment discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), there was no evidence from which the District Court could infer that Ramos was treated by Adecco or EquiServe less favorably than other similarly situated non-minority persons. There was no evidence, for instance, that in Ramos's case, Adecco or EquiServe applied their respective policies of conducting routine criminal background checks on temporary employees differently because of Ramos's race or national origin. Thus, based on the undisputed facts, the District Court held that Ramos failed to make out a prima facie adverse treatment claim based on race or national origin as a matter of law.

The District Court also found that, even assuming that Ramos made out a prima facie case of employment discrimination, the defendants proffered a legitimate, non-discriminatory reason for his removal which Ramos failed to rebut. The District Court noted Ramos's acknowledgment that he consented to the background check by EquiServe, he knew that EquiServe was required by law to conduct a criminal background search because of the type of work he did for them, and he had authorized EquiServe and Adecco's exchange of information with each other regarding his criminal

5

background. As for Ramos's state law claim under N.J.A.C. § 13:59-1.6, the District Court determined that no violation occurred because D'Amico gave Ramos an opportunity to correct the record when he told Ramos that he would be accepted back into the job if Ramos provided documentation that the criminal charges were dismissed. Moreover, EquiServe was willing to accept Ramos and Adecco was willing to send Ramos back to EquiServe so long as EquiServe signed a release. The District Court concluded that it was EquiServe's failure to comply with Adecco's request for a release that prevented Ramos's re-assignment to EquiServe. Based on the foregoing, the District Court granted summary judgment in the defendants' favor. Ramos filed a timely notice of appeal.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and exercise plenary review over an order granting summary judgment. See Pub. Interest Research Group of N.J., Inc. v. Powell Duffryn Terminals, Inc., 913 F.2d 64 (3d Cir. 1990). As is well understood, summary judgment is granted when "no genuine issue [exists] as to any material fact and [when] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the facts in the light most favorable to the nonmoving party and we draw all inferences in that party's favor. See Reitz v. County of Bucks, 125 F.3d 139, 143 (3d Cir. 1997). We will affirm for substantially the same reasons set forth in the District Court's opinion.

Ramos argues that the reasons Adecco and EquiServe gave for terminating his

6

temporary assignment at EquiServe are pretextual, because EquiServe does not apply its Equal Employment Policies to qualified, productive, minority new hires like Ramos. He claims that the Appellees' actions were discriminatory because they contravened company policies in dealing with prior records of convictions as opposed to arrests. He challenges Adecco's position that they had no knowledge of the contents of the FBI record, pointing to the Adecco Employee Notes of Amy Michel indicating that as early as February 16, 2001, Turner had recommended that the Paramus office "not use Ramos," because Ramos had been charged with theft and grand larceny. See Plaintiff's Motion for Reargument, at 9. Amy Michael's entry also reported that Turner was given a written list of all of Ramos's convictions and that Turner was waiting for the hard copy. Id. Ramos disputes Turner's sworn statement that the February 26, 2001 memorandum was written at Ramos's request to help him obtain unemployment benefits. He testified in his deposition that in June 2001, Ramos successfully found employment at Chase Mellon Bank, only to be let go on his first day. He was told by Chase Mellon that his release was because of the memorandum from Adecco and comments made in a follow-up phone call. See Appellees' App., Ramos Dep, AA-85-86.

We recognize that the inquiry into whether an employee's race or national origin caused the conduct at issue often requires an assessment of the individual's motivations and state of mind, matters that are not as readily amenable to disposition at summary judgment. Faced with a properly supported summary judgment motion, however, a

plaintiff must come forth with some evidence sufficient to create a genuine issue of material fact. In Ramos's case, he has not met his burden of showing that his removal because of his arrest record was a pretext for ending his temporary assignment to Equiserve on account of his race or national origin. Viewing the evidence in the light most favorable to Ramos, we agree with the District Court that Ramos's removal from temporary employment at EquiServe was caused by the discovery of his arrest record alone. A violation of company policy can constitute a pretext for unlawful discrimination if others similarly situated were treated differently under the policy. See Delli Santi v. CNA Ins. Companies, 88 F.3d 192, 203-04 (3d Cir. 1996). Here, however, as the District Court correctly found, there is no evidence that Adecco or EquiServe used their respective hiring policies regarding prior arrests and convictions in such a way as to favor similarly situated non-minorities. Finally, even assuming that Turner knew about Ramos's arrest record as early as February 2001, and that Ramos was denied employment opportunities at AT&T and Chase Mellon because of Turner's communication that Ramos had a "tarnished record," this evidence supports rather than rebuts the conclusion that the arrest record (which Adecco treated as a record of convictions), not Ramos's race or national origin, was the motivating factor for Adecco's actions. The facts that EquiServe was willing to re-employ Ramos and that Adecco was willing to re-assign Ramos to EquiServe if EquiServe submitted a release, also support the inference that their main concern was Ramos's record of criminal charges.

8

Ramos's claims suggest that Adecco, especially, may have acted unfairly in rushing to judgment when it construed Ramos's arrest record as a record of convictions, but Title VII does not prohibit unfairness or wrongheaded decisions in the workplace. See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994); Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997) ("when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination"). Thus, we conclude that the District Court properly granted summary judgment in favor of Adecco and EquiServe.

Finally, Ramos also appeals the District Court's denial of his motions to impose sanctions and to re-open discovery, as well as a Magistrate Judge's order entered July 24, 2002, denying appointment of counsel. The District Court did not abuse its discretion in denying Ramos's motions for sanctions and to re-open discovery. As for the Magistrate Judge's denial of appointment of counsel, Ramos failed to object to the Magistrate Judge's order in District Court, and thus, the issue is waived for purposes of appeal. See United Steelworkers of Am. v. New Jersey Zinc Co., 828 F.2d 1001, 1006 (3d Cir. 1987). But even if the issue were not waived, we discern no circumstances warranting appointment of counsel in this case. See Tabron v. Grace, 6 F.3d 147 n.2 (3d Cir. 1993).

Accordingly, we will affirm the judgment of the District Court.

9