In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2977

AMY SILVERMAN,

*Plaintiff-Appellant*,

*v.*

BOARD OF EDUCATION OF THE CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 2220—**Blanche M. Manning**, *Judge.*

ARGUED JANUARY 18, 2011—DECIDED MARCH 21, 2011

Before TINDER and HAMILTON, *Circuit Judges*, and
MURPHY, *District Judge.**

HAMILTON, *Circuit Judge*. Amy Silverman sued the
Board of Education of the City of Chicago alleging that
the Board first discriminated against her on the basis of

_____

* The Honorable G. Patrick Murphy of the Southern District of
Illinois, sitting by designation.

her pregnancy and then retaliated against her for filing a charge with the Equal Employment Opportunity Commission, both in violation of Title VII of the Civil Rights Act of 1964 as amended by the Pregnancy Discrimination Act.

From July 2004 until May 2005, Silverman worked at Lincoln Park High School as one of seven probationary special education teachers whose employment contracts were subject to annual renewal. When the Board decided to eliminate one special education teaching position at Lincoln Park in the spring of 2005, school principal Bessie Karvelas chose Silverman, who was pregnant at the time. Silverman filed a complaint with the EEOC charging that the Board violated Title VII by not renewing her contract because she was pregnant. Two months later, the Board offered Silverman a new position teaching autistic students at the same school. Silverman accepted this new position, but the Board decided not to renew her contract at Lincoln Park a second time in the summer of 2006.

After the EEOC found reasonable cause to believe that the Board discriminated against her, Silverman brought suit in the Northern District of Illinois. Her first claim echoed her original discrimination complaint to the EEOC, alleging that the Board decided not to renew her contract in May 2005 because she was pregnant. Silverman also claimed that the Board retaliated against her for having filed a charge with the EEOC by offering her a more difficult position for the 2005-2006 school year and by not renewing her contract after that school year.

The district court granted summary judgment to the Board on both counts, and this appeal followed. We review the district court's decision de novo, construing all facts in the light reasonably most favorable to Silverman as the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Even in this light, we conclude that Silverman has not presented sufficient evidence to defeat the Board's motion on either of her claims.

I. *The EEOC Determination*

Before digging into the merits of the parties' arguments, we address first the district court's treatment of the EEOC's administrative determination. After investigating Silverman's charges, the EEOC found reasonable cause to believe that the Board discriminated against Silverman because of her pregnancy and retaliated against her for filing a discrimination charge. Silverman argues that the EEOC determination alone ought to show that the district court erred by granting summary judgment to the Board. The district court chose not to consider the EEOC determination in deciding the Board's motion for summary judgment. We conclude that the district court acted well within its discretion, and pursuant to its obligation to make a de novo decision on the plaintiff's claims.

We held in *Tulloss v. Near North Montessori School, Inc.*, 776 F.2d 150, 152-54 (7th Cir. 1985), that the district judge, as fact-finder, has "great discretion" in the treatment of an EEOC reasonable cause determination. We explained that Congress rejected a proposal to provide

only deferential judicial review to EEOC findings, and chose instead to give the parties a right to de novo review by district courts of the merits of charging parties' discrimination claims, so that "the fact-finder is a district judge rather than an administrative agency hearing officer." *Id.* at 152, citing H.R. Rep. No. 92-238, at 58-63. We also observed that the need for discretion was "even more important" in the context of claims tried to a jury in light of the greater risks of prejudice, misinterpretation, and delay. *Id.* at 153 n.2. (In 1991, after *Tulloss* was decided, Congress amended Title VII to provide for jury trials in cases like Silverman's. See 42 U.S.C. § 1981a(c), enacted as section 102 of the Civil Rights Act of 1991, Pub. L. No. 102-166.)[1]

Whether an EEOC determination is in favor of a charging party or a respondent, a district judge or jury cannot evaluate the weight it deserves, if any, without understanding what evidence was presented to the EEOC and whether that evidence is properly admissible in court. See, *e.g.*, *Tulloss*, 776 F.2d at 154-55 (describing

---

[1] Strictly speaking, an EEOC determination is hearsay if it is offered to prove the truth of the finding. The Supreme Court has indicated that a determination can fall within the exception in Federal Rule of Evidence 803(8)(C) for "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." See *Chandler v. Roudebush*, 425 U.S. 840, 863 n.39 (1976). Admissibility under Rule 803(8)(C) does not answer questions of prejudice, confusion, and waste of time under Rule 403.

prejudicial and inadmissible contents of EEOC investigative file). That sort of effort will rarely add much to the probative value of the admissible evidence that is actually submitted to the court or jury for a de novo decision on the merits. See *Lewis v. City of Chicago Police Department*, 590 F.3d 427, 442 (7th Cir. 2009) (concluding district court did not abuse its discretion by excluding EEOC reasonable cause determination); *Young v. James Green Management, Inc.*, 327 F.3d 616, 623-25 (7th Cir. 2003) (affirming decision to exclude EEOC findings of discrimination from evidence in jury trial).

Silverman contends without explanation that some evidentiary material available to the EEOC was not available to the district court. As the district court observed, however, the parties had every opportunity to present their full case, including evidence offered in the EEOC proceedings, in the district court. The district court did not abuse its discretion in deciding that the EEOC determination was not probative in its analysis. For the same reason, neither is it probative in ours. We proceed to the merits of Silverman's claims.

II. *The Claim of Pregnancy Discrimination*

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of that person's sex. See 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act of 1978, Pub. L. No. 95-555, added a definition to 42 U.S.C. § 2000e(k) to make clear that "discrimination

based on a woman's pregnancy is, on its face, discrimina-tion because of her sex." *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 684 (1983). As with other Title VII claims, a plaintiff may prove pregnancy discrimination either directly or indirectly. See *Griffin v. Sisters of St. Francis, Inc.*, 489 F.3d 838, 844 (7th Cir. 2007). To avoid summary judgment under the direct approach, the plaintiff must produce sufficient evidence, either direct or circumstantial, to create a triable question of intentional discrimination in the employer's decision. *Miller v. American Family Mutual Insurance Co.*, 203 F.3d 997, 1005 (7th Cir. 2000); *Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir. 1996). A plaintiff also may proceed under the indirect, burden-shifting method adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Like the district court, we conclude that Silverman did not present sufficient evidence under either approach to defeat the Board's motion.

### A.  *The Direct Method*

To succeed under the direct method, Silverman must offer either direct evidence that would prove the fact in question—the discriminatory intent—without reliance on inference or presumption, *Venturelli v. ARC Community Services, Inc.*, 350 F.3d 592, 599 (7th Cir. 2003), or "a con-vincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker. See *Coffman v. Indianapolis Fire Department*, 578 F.3d 559, 563 (7th Cir. 2009), quoting *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006); *Davis v. Con-Way*

*Transportation Central Express, Inc.*, 368 F.3d 776, 783-84 (7th Cir. 2004). Silverman has no direct evidence of intent to discriminate against her on the basis of pregnancy, so she relies on the latter approach.

A plaintiff using the "convincing mosaic" approach to prove a discrimination claim under the direct method may present any of three broad types of circumstantial evidence. The first type includes "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Troupe v. May Department Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Silverman relies principally on this type of evidence, and it will be the focus of our attention. The second type is evidence showing that the employer "systematically treated other, similarly situated, non-pregnant employees better." *Venturelli*, 350 F.3d at 601. Silverman offered no potentially probative evidence of this type.[2] Finally, the third type of circumstantial

---

[2] Silverman asserts without any citation or elaboration that "[i]t is clear that [principal] Karvelas treated all the other non-pregnant [probationary teachers] better than Silverman, all of whom she renewed." This bare assertion is plainly insufficient to defeat the Board's motion. Silverman presents no evidence "whether or not rigorously statistical, that employees similarly situated to [her] . . . received systematically better treatment." *Troupe*, 20 F.3d at 736. Though the other special education probationary teachers' contracts were renewed for the

(continued...)

evidence is evidence that the plaintiff suffered an adverse employment action and that the employer's justification is pretextual. See *id*. Cf. *Troupe*, 20 F.3d at 736 (describing the third type of evidence as evidence that the plaintiff was passed over or replaced by another, and that the employer's justification was pretextual). This type of evidence is substantially the same as the evidence required to prove discrimination under the indirect method, so we address Silverman's attempt to show pretext in that context below. See *Huff v. UARCO, Inc.*, 122 F.3d 374, 380 (7th Cir. 1997).[3]

---

[2] (...continued)
following school year, Silverman has not offered evidence that the Board or Karvelas regularly and repeatedly treated non-pregnant probationary teachers better than pregnant probationary teachers.

[3] Silverman insists that the Board stipulated before the district court that she had proven a prima facie case under the direct method. She cites the Board's memorandum and reply attached to its summary judgment motion in which it stipulated for the purposes of summary judgment that Silverman had demonstrated a prima facie case of discrimination. We are not persuaded. Although the Board did not specify that its stipulation was a response only to Silverman's argument regarding the indirect method, this stipulation makes sense only with respect to the indirect method of proof discussed below. Because the direct method of proof involves no burden shifting, such a concession would wipe out the Board's summary judgment motion with respect to Silverman's discrimination claim.

(continued...)

As to her "bits and pieces" evidence, Silverman relies on a statement made by principal Karvelas, along with conflicting testimony regarding when Karvelas found out Silverman was pregnant, and suspicious timing of the non-renewal of Silverman's contract. Even under the summary judgment standard, we are not persuaded.

---

[3] (...continued)

We have noted that the focus of the direct method is whether the evidence "points directly to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (quotation marks omitted). Once a plaintiff produces such evidence, the defendant's summary judgment motion necessarily must fail, in contrast to the burden-shifting approach of the indirect, *McDonnell Douglas* method. Thus, it is relatively unusual to employ the term "prima facie case" in the context of the direct method, see generally Georg Nils Herlitz, *The Meaning of the Term "Prima Facie"*, 55 Louisiana L. Rev. 391, 395-97 (1994) (describing the historic use of the term and its longstanding meaning), though we have used the phrase occasionally, see *Darchak v. City of Chicago Board of Education*, 580 F.3d 622, 632 (7th Cir. 2009) (determining that the plaintiff had established a prima facie case of retaliation under the direct method); *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 905 (7th Cir. 2006) (same).

Here, the Board clearly contested Silverman's arguments under both the direct and indirect methods. It offered its stipulation in reference only to the prima facie elements of the indirect method. To apply the stipulation to Silverman's summary judgment argument on the direct method of proof would make no sense at all.

Silverman points first to her testimony about a comment made by Karvelas in the spring of 2005 when Silverman inquired about maternity leave after notifying the school of her pregnancy. Karvelas replied, "I only took one week for maternity leave. But you, honey, should take as long as you want to." Contrary to Silverman's assertions, Karvelas's comment does not come close to implying that Karvelas in any way disapproved of Silverman's pregnancy or her request for maternity leave, and it is even farther from substantiating her claim that her contract was not renewed because of her pregnancy.

Karvelas's comment is not analogous to any of the statements made by employers in the cases Silverman cites. In *Darchak v. City of Chicago Board of Education*, 580 F.3d 622, 627 (7th Cir. 2009), a principal called the plaintiff-teacher a "stupid Polack." The *Darchak* principal's explicit epithet was direct evidence of discrimination. In the absence of sarcasm, of which there is no evidence, Karvelas's statement does not even approach a disparagement of Silverman or her pregnancy. In *Duncan v. Fleetwood Motor Homes of Indiana, Inc.*, 518 F.3d 486, 490 (7th Cir. 2008), an employer allegedly commented that the older workers "no longer could do many things," even though the plaintiff, age fifty-one, was performing the essential functions of his job. That employer's general statement unequivocally belittled older workers. Karvelas's statement, by contrast, encouraged Silverman to take as much time off as she needed after giving birth.

Where an ambiguous comment is made with a tone of sarcasm or enmity, a court may attribute greater weight

to an alleged discriminatory inference. See, *e.g.*, *Hasham v. California State Board of Equalization*, 200 F.3d 1035, 1044, 1050 (7th Cir. 2000) (concluding that a comment made with a demeaning tone raised questions regarding credibility). But where, as here, Silverman has not alleged any sarcastic, demeaning, or derisive tone, we take the comment at its face value. This one does not reflect any discriminatory animus.

Silverman also maintains that a jury could infer discriminatory intent based on Karvelas's conflicting testimony about exactly when she learned that Silverman was pregnant. The Board admitted in the EEOC proceedings (and maintained before the district court) that Silverman informed Karvelas of her pregnancy in or around March 2005. In her deposition nearly four years after the incident, however, Karvelas testified that she "had no idea the girl was pregnant" at the time she chose not to renew her employment, on March 29, 2005. Yet Silverman herself could not recall the dates and context of her notification. She first testified that she notified Karvelas she was pregnant on March 16, 2005. Later, Silverman stated that she first told Karvelas on March 8. These factual issues are not material to Silverman's claim. A data printout from the Board's employment management system indicated that, regardless of which date is correct, even after Silverman told her of the pregnancy, Karvelas decided to *renew* Silverman's contract. The electronic records show that Karvelas marked Silverman's file for renewal on both March 17 and March 28. Only later, on March 29, did Karvelas choose not to renew Silverman's contract when

prompted by the Board to eliminate one special education position.

Finally, Silverman contends that it was suspicious for Karvelas to decide not to renew her contract two or three weeks after she had notified her of her pregnancy and that this timing supports an inference that the Board's motive was discriminatory. This argument suffers from two principal flaws. First, suspicious timing alone is rarely sufficient to defeat a motion for summary judgment. See *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009). As we emphasized in *Cole*, "mere temporal proximity is not enough to establish a genuine issue of material fact," *id.*, quoting *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008), and here, plaintiff has nothing more than weak proximity at best. Second, as we have noted, Silverman's claim is further contradicted by the computer records from the Board's employment system showing beyond reasonable dispute that Karvelas chose to renew Silverman's employment after learning she was pregnant.

Taken separately or taken together, Karvelas's comment, the conflicting dates regarding when Karvelas found out Silverman was pregnant, and the timing of her non-renewal do not reach the threshold necessary for Silverman to defeat the Board's motion.

B.  *The Indirect Method*

Silverman argues that she also has sufficient evidence to show pregnancy discrimination using the indirect

method, which requires her first to offer evidence of a prima facie case that: (1) she was pregnant and the Board knew she was pregnant; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated non-pregnant employees were treated more favorably. *Clay v. Holy Cross Hospital*, 253 F.3d 1000, 1005 (7th Cir. 2001). The Board agreed for purposes of summary judgment that Silverman could meet that burden. The burden then shifted to the Board to articulate a legitimate, non-discriminatory reason for firing her. After the Board provided a reason, Silverman could survive summary judgment only by offering evidence that the Board's reason was a pretext, which permits an inference of unlawful discrimination. *Id.* Silverman makes two pretext arguments, neither of which is convincing.

### 1.   *Evaluations in the Spring of 2005*

The Board argues that Silverman was selected for non-renewal in 2005 because she was the least effective of the probationary special education teachers at the school. To support this assertion, the Board offers Karvelas's testimony and her contemporaneous written notes regarding Silverman's teaching. In February 2005, Karvelas stopped by the classrooms of each of the probationary teachers working with special education students to observe their teaching. Karvelas testified that during a visit to Silverman's classroom she noticed a student wearing headphones and listening to a Walkman during the lesson. Her observation notes indicated that

Silverman was simply "standing" rather than engaging with the student while this occurred. Silverman disputes this description, stating in her affidavit that she never saw a student wearing headphones or using a Walkman during a lesson.

Karvelas also testified that during her periodic walks through the halls of the school, she noticed that another of Silverman's classes, co-taught with another teacher, was "always rowdy." Karvelas stated that, according to her notes, on one occasion she had to stop to reprimand the class because the students were very loud and exhibited "uncontrollable behavior." Silverman denied that any of her classes engaged in "uncontrollable behavior," though she admitted that Karvelas stopped to reprimand her class.

The district court concluded, and we agree, that Silverman's disagreement with Karvelas's evaluation does not present a genuine issue of material fact about the reasons for the Board's decision not to renew her contract. Though the Board admits Silverman performed well enough to meet the expectations of her job, the situation changed when Karvelas was told she had to choose one of the probationary special education teachers for non-renewal. That situation makes this case different from *Duncan v. Fleetwood Motor Homes of Indiana*, the case on which Silverman relies. In *Duncan*, the employer argued both that the employee was performing up to its expectations, and also that he was unable to meet the physical demands of the job. We held that those contradictory positions could not withstand

scrutiny and concluded the employer's stated reason could be deemed pretextual. 518 F.3d at 491. Here, by contrast, the Board has not advanced a contradictory rationale for its decision not to renew Silverman's employment. In light of the difficult financial situation, Karvelas was required to select one special education teacher for non-renewal. The Board's position that all the teachers, including Silverman, were meeting the Board's expectations, but that Silverman was the least effective among them, is not internally inconsistent.

Silverman's argument that the Board's position "evolved" between the EEOC proceedings and the proceedings in the district court likewise does not get her very far. Silverman takes the position that the EEOC's reasonable cause determination must be afforded consideration because it makes discrepancies in the Board's argument more salient and her argument more credible. The EEOC's determination itself, stating only that the agency found reasonable cause of discrimination and retaliation, in no way shows any evolution in the Board's position or its arguments. Insofar as Silverman intends to argue that the Board's position changed between the proceedings before the EEOC and those before the district court and that such a change constitutes evidence of pretext, she presented evidence to that effect in the district court by offering the Board's EEOC position statements. Although in some cases one can "reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision," *Appelbaum v. Milwaukee Metropolitan Sewerage District*, 340 F.3d 573, 579 (7th Cir. 2003), the

district court did not find any change in the Board's position here to be inconsistent, and neither do we. Moreover, as the Board points out, both parties' arguments evolved over the course of their dispute, as frequently occurs in litigation.

Silverman also contends that the parties' conflicting factual accounts show a genuine issue of material fact. She asserts that Karvelas inappropriately based her judgment on one or two incidents she observed during which she noted that Silverman was not engaged with the students or not in control of the classroom. According to Silverman, her classroom manner was appropriate. Based on this dispute, Silverman argues that the Board's motion should have been denied. We again disagree. Taking Silverman's account as true—that Karvelas's account is wrong and that her notes were not substantiated by the events at the time—Silverman has still failed to offer evidence that the reason given by the Board was dishonest. To defeat the Board's motion, she must point to evidence suggesting that the Board itself did not give an honest explanation of its reason.

Silverman's argument is like many that arise in employment discrimination cases where the employee disagrees with an employer's negative assessment of the employee's performance. See, *e.g.*, *Ptasznik v. St. Joseph Hospital*, 464 F.3d 691, 697-98 (7th Cir. 2006) (accepting employer's non-discriminatory justification of inexcusable performance and concluding that a court should not "interfere in employment decisions simply where [it] believe[s] an employer has made a poor choice"). If

such disagreements were enough to avoid summary judgment and go to trial on an indirect proof case, summary judgment would become extinct and employer's evaluations of employees would be supplanted by federal juries' evaluations. We have said in substance more times than we can count that when an employer articulates a plausible, legal reason for discharging the plaintiff, "it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997); accord, *e.g.*, *Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010) (noting that subjective evaluations of job candidates are consistent with Title VII); *Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009) (recognizing that the role of the court is not to second-guess employers' business judgments); *Ptasznik*, 464 F.3d at 697 ("We do not sit as a super-personnel department with authority to review an employer's business decision"), quoting *Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005).

Nevertheless, an employer's negative evaluation of the plaintiff's performance is not always the last word. If the plaintiff can raise a genuine issue about the honesty, not merely the accuracy, of the employer's stated evaluation, the case may need to be tried. An employee "may demonstrate that the employer's reasons are unworthy of credence through evidence showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, *or* (3) that they were insufficient to motivate discharge." *Mechnig*

*v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) (emphasis in original, quotation marks omitted). See also *Cliff v. Board of School Commissioners of the City of Indianapolis*, 42 F.3d 403, 412 (7th Cir. 1994) (recognizing *Mechnig* framework in context of plaintiff-teacher's claim that defendant-Board's non-discriminatory basis for not renewing her contract—negative performance reviews—was pretextual).

Silverman rests her case on the first type of evidence described in *Mechnig*, asserting that the Board's stated reason had no basis in fact. Such arguments require strong evidence that could leave a disinterested observer doubting the honesty of the stated reason. See, *e.g.*, *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006) (concluding that it is insufficient for a plaintiff to show that an employer's decision was mistaken or ill-considered where it is undisputed that an employer honestly believes a non-discriminatory rationale for termination); *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir. 1992) (noting that the issue of pretext in age discrimination context addresses whether the employee honestly believes in the reasons it offers for its employment decision).

Silverman simply has not provided any evidence beyond her mere disagreement with Karvelas's evaluation to indicate that the Board did not in fact base its decision on Karvelas's recommendation and assessment of her performance as it has argued. We explained this requirement with respect to age discrimination in *Futrell v. J.I. Case*, 38 F.3d 342, 346 (7th Cir. 1994): "If the evi-

dence does not amply support a plaintiff's claim that the defendant's explanation is unworthy of credence, judgment as a matter of law is entirely appropriate." The same conclusion follows in a Title VII analysis.

Thus, even looking directly at Karvelas's evaluations and their factual bases, it is irrelevant to a summary judgment analysis whether Karvelas mischaracterized Silverman's classroom management skills. We simply do not weigh the prudence of employment decisions made by firms charged with employment discrimination. See *id.* "An employer can fire an employee for any reason, fair or unfair, so long as the decision to terminate is not based on age or some other protected category." *Kier v. Commercial Union Insurance Cos.*, 808 F.2d 1254, 1259 (7th Cir. 1987).

Most detrimental to Silverman's claim is the undisputed fact that Karvelas observed one of Silverman's classes in February 2005, well before she learned of the pregnancy, so that negative evaluation could not possibly have been affected by any supposed bias against pregnancy. Neither has Silverman provided any evidence to call into question Karvelas's written observations regarding other teachers, all of which were positive. It is not sufficient for Silverman to argue, as she has, that all the teachers were good but because the one teacher whose employment was not renewed was pregnant, her pregnancy must have been the deciding factor for her selection. We are left with no evidence from which a reasonable jury could infer pretext and discriminatory animus. In the absence of any whiff of disapproval by the Board of her pregnancy, Silverman cannot avoid

summary judgment with an "unadorned claim" that a jury might not believe the Board's explanation. *Giannopoulos*, 109 F.3d at 411.

### 2. *Interviewing Others for the New Position*

Silverman also tries to support her pretext argument with evidence of the Board's actions after her contract was not renewed. On July 27, 2005, the Board's Office of Special Services notified principal Karvelas that Lincoln Park would be the site of a new autism unit and that a new autism teaching position would become available for the 2005-2006 school year. In a letter dated the very next day, Karvelas offered Silverman this new position, which she accepted on August 11. In spite of her rehire, Silverman maintains that the circumstances surrounding her rehire were evidence of pretext. Karvelas interviewed two other teachers for the autism position. Silverman claims that these interviews were attempts by Karvelas and the Board to avoid rehiring her. She argues that they support her pretext argument under the indirect method by indicating that "Karvelas took a dim view of pregnant teachers, had no intention of offering Silverman the new position until told by the Law Department that she had to, and remained intent on getting rid of Silverman."

This is speculation rather than a reasonable inference. With the start of the school year fast approaching, the Board needed to conduct interviews for either Silverman's maternity-leave substitute or a permanent teacher in case Silverman declined her offer. It was perfectly rea-

sonable for the Board to hold interviews and to be unsure at that time whether it would be able to offer the interviewee a short-term or permanent position. Most important here is that the Board offered Silverman the position and Silverman accepted. The fact that Karvelas interviewed other teachers is not enough for a rational trier of fact to infer pretext and find for Silverman on her discrimination claim.

III. *The Retaliation Claim*

In her second count, Silverman alleges that the Board retaliated against her for filing a charge of discrimination with the EEOC. She contends this retaliation took the form of rehiring her for a more difficult position and not renewing her contract to teach at Lincoln Park after the 2005-2006 school year.[4] Title VII prohibits an employer from taking an adverse employment action against an employee because she has filed an employment discrimination charge. See 42 U.S.C. § 2000e-3(a); *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 62 (2006). As with her discrimination claim, Silverman may defeat a motion for summary judgment by providing sufficient evidence of retaliation through either a direct or indirect method. See *Weber v. Universities*

---

[4] As noted by the district court, Silverman obtained another teaching position at a different Chicago school by August 2006 and thus suffered no loss of compensation or benefits. In this action, she seeks only compensatory damages for mental and emotional distress.

*Research Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). Silverman proceeds under both methods. We find no sufficient evidence of retaliation under either method.


A. *The Direct Method*

To avoid summary judgment under the direct method of proof for proving retaliation, a plaintiff must show: (1) that she engaged in a statutorily protected activity; (2) that she suffered a materially adverse action by her employer; and (3) there was a causal link between the two. *Jones v. Res-Care, Inc.*, 613 F.3d 665, 671 (7th Cir. 2010). Silverman satisfied the first element. Filing a charge with the EEOC about the alleged discrimination is the most obvious form of statutorily protected activity. See 42 U.S.C. § 2000e-3(a); *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 677 (7th Cir. 2010). For the second element of an adverse action, Silverman identifies three: assigning her to a more difficult position with the autism class in 2005; writing negative evaluations of her teaching during the 2005-2006 school year; and deciding not to renew her contract in 2006. The Board contends the first and second actions do not qualify, but concedes that the non-renewal of Silverman's contract in 2006 qualifies as an adverse action.

In a retaliation case, an adverse action is "one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Roney v. Illinois Dep't of Transportation*, 474 F.3d 455, 461 (7th Cir. 2007). Although Silverman characterizes one of her alleged adverse

actions at issue here as "an assignment" to a more difficult position, she refers in fact to the Board's offer to her of a new position, not a revised assignment. Having lost her position in the spring of 2005—and, as we have explained, there was nothing unlawful about that decision—she was offered the only position that became available that summer for someone with her qualifications. That action cannot reasonably be characterized as retaliatory. Even if we assume that Silverman's new teaching role was less desirable than her previous one, the Board was under no obligation to rehire her for any position at all. To characterize the Board's offer as a retaliatory change in assignment is to misconstrue the series of events leading to Silverman's acceptance of the newly created position. The Board's job offer to teach autistic students at Lincoln Park was not an adverse action.

The parties further dispute whether the negative evaluations Silverman received during the 2005-2006 school year were adverse actions. In February and March 2006, Karvelas observed Silverman's autism class. Her observation notes indicated that, by her assessment, Silverman was not performing well in the classroom. As a result, Silverman received at least one written notice from Karvelas stating that her classroom instruction was weak. Silverman contends that these criticisms of her teaching, the veracity of which she disputes, constitute adverse employment actions. As the Supreme Court has taught, Title VII does not set forth a general civility code for the workplace. See *Burlington Northern*, 548 U.S. at 68. The statute does, however, prohibit employer actions that are likely to deter victims of discrimination

from complaining to the EEOC. *Id.* In *Burlington Northern*, the Court made clear that context matters to the determination of what constitutes a materially adverse action. *Id.* at 69. In this context, we agree with Silverman that a negative performance evaluation could constitute an adverse action within the meaning of the direct method of proving retaliation (as distinct from a claim of discrimination based on a prohibited classification). Nevertheless, under the direct method, Silverman still bears the burden of providing evidence tending to show a causal connection between those evaluations and her complaint with the EEOC months earlier, before she was rehired for the 2005-2006 year. The fact that the evaluations occurred later does not suffice to show a causal connection. Silverman has not offered evidence that the evaluations were causally linked to her EEOC charge, so we need not consider them further.

The Board concedes that its decision not to renew Silverman's contract in the summer of 2006 constituted an adverse employment action. Silverman must then offer "evidence that reasonably suggests" that her protected activity was related to the Board's decision. See *Lewis v. City of Chicago*, 496 F.3d 645, 655, quoting *Burks v. Wisconsin Dep't of Transportation*, 464 F.3d 744, 758-59 (7th Cir. 2006). In *Lewis*, we held that the plaintiff properly supplied additional evidence beyond suspicious timing to survive summary judgment on a retaliation claim. There, the plaintiff's supervisors treated her less well after she filed a discrimination charge. See *id.* at 655-56. Here, however, Silverman has not presented any evidence to back up her claim. She refers to the interviews

that took place around the time that she received her autism job offer and states that "a jury could conclude that Karvelas had no intention of rehiring Silverman" based on that evidence. The fact that the interviews took place has nothing to do with establishing a causal connection between Silverman's EEOC charge and the non-renewal of her contract the following spring, nor does Silverman suggest any way that it might substantiate her assertion.

In the absence of any persuasive evidence of retaliation through the direct method, we turn to Silverman's attempt to prove by the indirect method that the Board intended to retaliate against her.

B.   *The Indirect Method*

To establish a prima facie case of retaliation under the indirect method, Silverman must demonstrate two of the same elements required by the direct method: first, that she engaged in a statutorily protected activity and, second, that she suffered an adverse employment action. *Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007). As noted, the Board concedes that Silverman has established these two elements as to its decision to not renew her contract in 2006. The indirect method also requires Silverman to show that she met the Board's legitimate expectations and that she was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity. See *Leonard v. Eastern Illinois University*, 606 F.3d 428, 431 (7th Cir. 2010). If she estab-

lishes these elements, the burden shifts to the Board to produce a legitimate, non-retaliatory reason for not renewing Silverman's contract. *Nichols*, 510 F.3d at 785. If it succeeds in doing so, then Silverman must come forward with evidence that the Board's proffered reasons were only a pretext for retaliating against her. *Id.* Neither party doubts that Silverman met the Board's legitimate expectations. The parties dispute, however, whether the Board treated a similarly situated employee more favorably. We agree with the district court that Silverman failed to offer sufficient evidence that she was treated less favorably than a similarly situated employee. She cannot prove retaliation through the indirect method.

If an employer takes an action against one employee in a protected class but not another outside that class, and all else is equal between the comparators, we can infer discrimination, at least provisionally at the prima facie stage of the analysis. See *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008). The purpose of the "similarly situated" comparator element is to ensure that all other variables are discounted so that an inference of unlawful intent would be reasonable. Thus, although the "similarly situated" inquiry is a "flexible, common-sense one," *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2009), the comparators must be similar enough that any differences in their treatment cannot be attributed to other variables. See *Senske v. Sybase, Inc.*, 588 F.3d 501, 510 (7th Cir. 2009) (noting that a difference in performance history would dilute the persuasive power of a similarly situated comparison in

age discrimination case); see also *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009) (similarly situated employee(s) must be "directly comparable to the plaintiff in all material aspects"). Those variables include distinctions in positions, performance, or supervisors. See *Senske*, 588 F.3d at 510.

Silverman contends that Jon Goldstein, a male probationary special education teacher, was similarly situated and was treated more favorably than she was. Goldstein also taught special education students and reported to Karvelas. Karvelas observed Goldstein's teaching around the same time that she observed Silverman. Her observation notes from Goldstein's class indicate that he was effective in managing his students. Karvelas gave Goldstein a "superior" rating for his work, while Silverman received only a "satisfactory" rating. These differences in performance quality undermine the comparison between Goldstein and Silverman for the purpose of a "similarly situated" analysis. Absent adequate evidence from which a reasonable jury could question the honesty of Karvelas's evaluations, we have no basis from which to infer that the Board's motive was actually retaliatory.

Even if we were to find that Silverman succeeded in establishing a prima facie case through the indirect method, we conclude, as the district court did, that Silverman's claim would still fail because she has not offered sufficient evidence that the Board's reason for not renewing her contract was pretextual. The Board again asserts substandard performance as its reason for not renewing Silverman's contract. The Board offers as evi-

dence of its position Karvelas's written observation notes, her testimony that Silverman failed to incorporate standard-based instruction into her work among other classroom management concerns, and testimony from Dr. Sylvia Love, a school psychologist, and Wanda Kramer, an assistant principal. In their declarations, Love and Kramer both related concerns they had while observing Silverman's classroom management. But according to Silverman, Love never entered her classroom and Kramer conducted only a "brief, pop-in" visit from which she was not qualified to make any determinations about Silverman's performance.

Federal Rule of Civil Procedure 56 requires the district court to grant a motion for summary judgment after discovery "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, taking the facts in the light most favorable to the plaintiff as the non-moving party, Silverman nevertheless falls short in her attempt to raise a genuine issue of material fact as to the honesty of the Board's justification for its decision. A successful pretext argument would require Silverman to do more than simply allege that the Board's reason for not renewing her contract is dishonest.

The strongest evidence Silverman offers to support her theory is the conflicting accounts regarding the Board's corroborative evaluations of her performance. Despite Love's declaration regarding her observations of Silver-

man's teaching, Silverman testified that Love simply never observed her—that it just never happened. With respect to Kramer, when Silverman testified in her November 2008 deposition, she did not recall Kramer coming into her classroom. In her April 2010 affidavit, however, Silverman stated that Kramer did enter her classroom for a quick visit during the spring of 2006. The district court did not rely on either of these accounts concerning Love or Kramer. Nevertheless, from these allegedly fabricated and unsubstantiated observations, Silverman maintains, a jury could infer retaliatory motive.

Although the parties dispute some of the facts surrounding these incidents, their dispute still does not create a genuine issue of material fact as to whether the Board's justification is worthy of belief. See *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 288-89 (7th Cir. 1999) ("We look not at the wisdom of the employer's decision, but rather at the genuineness of the employer's motives"); *Giannopoulos*, 109 F.3d at 411 (recognizing that the court does not decide whether a justification for termination was fair, but whether it was the true reason). The relevant task for our review, and the burden that Silverman bears, is to show a genuine issue of material fact regarding whether the Board's reliance on Karvelas's assessments was legitimate or was intended merely to conceal retaliatory intent. See *id.* Pretext is "more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 839 (7th Cir. 2009) (citation and quotation marks omitted). See also *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419

(7th Cir. 2006) (stating that pretext is "a deliberate false-hood"). As we have noted with respect to pretext in the discrimination context, if the Board honestly believed the non-discriminatory reason it proffered, the reason was not pretextual. See *Scruggs*, 587 F.3d at 839.

If the Board were supporting its decisions by relying on Love's observations, the factual dispute about whether she actually made the observations would be material. On this record, however, we do not believe that it is material. Karvelas was the key decisionmaker, and her observations in the 2004-2005 school year, some made before she learned of Silverman's pregnancy and all before the EEOC charge, were consistent with her negative observations in the 2005-2006 school year. And those observations were also consistent with Kramer's observations. Silverman points to nothing in the record that reasonably calls into question the Board's reliance on Karvelas's assessments. She has failed to raise a genuine issue of material fact about the honesty of the Board's stated non-discriminatory reason for not renewing her contract at the end of the 2005-2006 school year.

The judgment of the district court is therefore AFFIRMED.