[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11387
Non-Argument Calendar

_____

D.C. Docket No. 2:16-cv-01885-AKK


CRAIG D. LAWRENCE, SR., Ph.D.,

Plaintiff - Appellant,

versus

DR PERRY W WARD, President, in his official and individual capacities,
SHARON CREWS, Vice President for Administrative Services, in her official and
individual capacities,
LAWSON STATE COMMUNITY COLLEGE,

Defendants - Appellees.


_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 21, 2019)

Before TJOFLAT, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Craig D. Lawrence, Sr. sued Lawson State Community College ("Lawson State") and its president (the "President") and one of its vice presidents (the "Vice President")—in both their official and individual capacities—for various civil-rights violations.  These claims include a failure-to-promote claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), the only claim that is at issue here.  The President named one of Lawrence's black colleagues (the "Colleague") to the position of Associate Dean of the College of Career Technical Education ("Associate Dean"), a move that Lawrence, who is white, argues was racially discriminatory.

We affirm the District Court's grant of summary judgment for Defendants because Lawrence has failed to prove that Defendants' reason for not promoting him was pretextual, as is required under *McDonnell Douglas*.[1]  Because we write for the parties, we set out facts only as they are needed to support our analysis.

## I.

Before turning to the merits, we address a potential jurisdictional bar under the Eleventh Amendment.  *See* U.S. Const. amend. XI.  Defendants argued, and the District Court agreed, that Lawrence's suit against Lawson State was barred by the Eleventh Amendment because Lawson State is an "arm of the state."  The Court

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701 (1993).

2

also held that the suit against the President and the Vice President, in their official capacities, was barred because they are "state officials."  On appeal, Lawrence challenges only the Court's holding that the President enjoys official-capacity immunity.  He argues that the President is a proper party under *Ex parte Young*[2] because he seeks equitable, prospective relief—namely, instatement to the position of Associate Dean.

We ultimately affirm the District Court's grant of summary judgment for Defendants on the merits.  Under *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S. Ct. 1003 (1998), however, "an assertion of Eleventh Amendment immunity must be resolved before a court may address the merits of the underlying claim(s)."  *Seaborn v. Florida*, 143 F.3d 1405, 1407 (11th Cir. 1998).  Usually.

In *McClendon v. Georgia Department of Community Health*, 261 F.3d 1252 (11th Cir. 2001), we proceeded straight to a defendant-friendly merits determination because the defendants "insist[ed] upon [Eleventh Amendment immunity] only if it [was] necessary to prevent judgment against them on the merits."  *Id.* at 1258.  Unlike subject-matter jurisdiction, which cannot be waived, the Eleventh Amendment presents a "rather peculiar kind of 'jurisdictional' issue" that *is* waivable.  *Id.* at 1257 (quoting *United States v. SCS Bus. & Tech. Institute,*

---

[2] *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908).

3

*Inc.*, 173 F.3d 890, 892 (D.C. Cir. 1999)).  The *McClendon* defendants offered "two alternative bases for affirming the district court[]"—lack of jurisdiction under the Eleventh Amendment and failure to state a claim upon which relief could be granted.  *Id.*  So too here.

Defendants argue that even if the Eleventh Amendment does not shield the President, Lawrence's argument is "moot" because Lawrence has "no substantive basis for any remedy or relief, whether monetary or injunctive, as a matter of law." Like the *McClendon* defendants, Defendants here tell us that "either the Eleventh Amendment or [Plaintiff's] failure to state a claim is sufficient basis to affirm the [D]istrict [C]ourt's decision."  *Id.* at 1258 (alterations omitted).  With Defendants' permission, then, we proceed to the merits.

## II.

Under *McDonnell Douglas*, a plaintiff makes out a *prima facie* case of discrimination case by establishing, by a preponderance of the evidence, that he "(1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class or was treated less favorably than similarly situated individuals outside the protected class."  *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 n.7 (11th Cir. 2018).  If the plaintiff establishes these elements, the burden of production shifts to the defendant to present evidence of a "legitimate, non-

4

discriminatory reason for the challenged action." *Id.* at 1312. If the defendant does so, the burden shifts back to the plaintiff to prove—again, by a preponderance of the evidence, that the proffered reason was a "mere pretext for discrimination." *Id.*[3]

We review *de novo* a district court's grant of summary judgment. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010). Summary judgment is appropriate when the record indicates "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Because Lawrence concedes that Defendants have met their burden of production at stage two of the *McDonnell Douglas* framework, we begin our analysis there. We first outline Defendants' non-discriminatory reason for promoting the Colleague in lieu of him. We then analyze whether Lawrence has met his burden of proving that the reason was a pretext for discrimination.

---

[3] Alternatively, a plaintiff may present a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (footnote omitted) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011), *overruled by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)).

Though on appeal Lawrence highlights some circumstantial evidence that the President discriminated against him, he failed to present this evidence to the District Court. As such, he has waived the argument. *See Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*, 619 F.3d 1289, 1302 n.21 (11th Cir. 2010) ("We generally do not consider arguments raised for the first time on appeal.").

A.

Defendants contend that the Colleague was promoted to Associate Dean because (1) the position had long been vacant, (2) at the time of appointment, he had already been performing the duties of that role, and (3) he was the only supervisor at a certain level within the department. To assess Lawrence's pretext argument, we must first explain how the Colleague's promotion came to pass.

The Uniform Guidelines for Compliance and Monitoring of Recruitment and Selection at Alabama Community College System Institutions (the "Guidelines") detail how employment positions at Lawson State must be filled. The Guidelines provide for a process known as "reorganization." Under reorganization, a community-college president may solicit the chancellor for postsecondary education to reorganize an employee from one position to another. To do so, the president submits a letter to the chancellor along with a form. On the form, the president indicates the name of the proposed position for the employee, the name of the employee to be appointed to that position, and the employee's current position. He must also justify the reorganization.

The President did just that. He submitted a letter and the form to the chancellor requesting that the Colleague be reorganized from *Assistant* Dean of Career Technical Education to *Associate* Dean of Career Technical Education. The letter indicated that the Colleague "has unofficially handled the duties and

6

responsibilities of the Associate Dean for a number of years." On the form, the President also indicated that the Associate Dean position had been vacant for several years and that the Colleague was the "only Dean's level supervisor in the department." The President's request to reorganize the Colleague was approved by the chancellor about a month later.

## B.

Lawrence concedes that Defendants' explanation is non-discriminatory but asserts that it is nonetheless pretextual because it is logically unsound.

First, Lawrence argues that the proffered reason is pretextual because the Colleague had chaired only one of several divisions of the College of Career Technical Education. But nothing in the record indicates that chairing divisions is central to the Associate Dean's role. Rather, as indicated on the reorganization form, the Associate Dean provides general leadership by (1) "planning, recommending, and monitoring appropriate institutional budgets" and (2) "working with faculty and staff to create a professional learning environment where faculty and students are encouraged to excel." Lawrence presents no evidence to suggest otherwise.

Second, Lawrence argues that the reason is pretextual because although no posting is required for a reorganization, Defendants posted the vacancy anyway. As such, the logic runs, reorganization could not have been the real reason. But

Lawrence's premise is factually incorrect and stems from his failure to appreciate that Defendants must jump through more hoops to comply with state law than to comply with the Guidelines.

Under the Guidelines, the employee to be appointed must be selected *before* the reorganization request can be submitted. Indeed, as already explained, the reorganization form itself requires the college president to give a specific employee's name. A reorganization, then, does not anticipate a search for a someone to fill the position; the person is pre-selected.

Under Alabama law, however, boards of education must post notices of vacancy for certain positions. Ala. Code § 16-22-15. Under the plain text of the statute, "[*a*]*ll vacancies* involving jobs which are supervisory, managerial, or otherwise newly created positions shall nevertheless require posting notices of at least 14 calendar days [before the positions are filled]."[4] *Id.* § 16-22-15(c) (emphasis added).

The long and short of it is this: Nothing about the posting of a vacancy gives rise to any inference that the reorganization was a cover-up for discrimination.

---

[4] The "nevertheless" clause simply indicates that supervisory, managerial, or newly created positions do not benefit from a shorter seven-day posting period for vacancies that arise during the school year. *See* Ala. Code § 16-22-15(c).

8

## III.

For these reasons, the District Court's grant of summary judgment for Defendants is **AFFIRMED.**

    **SO ORDERED.**