[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-14155
Non-Argument Calendar

————————————————

D.C. Docket No. 5:17-cv-00101-TES

WAYNE JACKSON,

Plaintiff-Appellant,

versus

BLUE BIRD CORPORATION,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Georgia

————————————————

(November 15, 2019)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Wayne Jackson filed a lawsuit against his former employer, Blue Bird Corporation ("Blue Bird"), alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a) ("Title VII").[1]  Blue Bird filed a motion for summary judgment, which the district court granted. Jackson appeals the district court's grant of summary judgment in favor of Blue Bird, arguing that the district court erred when it determined that he had not established a prima facie case of racially discriminatory discipline.  For the reasons that follow, we affirm the district court's decision.

## I.    BACKGROUND

Jackson is an African-American man who was employed as a line shift supervisor at Blue Bird's school bus assembly plant in Fort Valley, Georgia, from 2013 until he was terminated in October 2016.  Three employees under Jackson's control suffered health issues at work during the summer of 2016.

The first occurred when William Harris reported to an employee in Blue Bird's medical center, on June 2, that he had a skin irritation.  The medical center employee asked Jackson to move Harris away from the insulation, which he believed was causing Harris's rash.  The following month, on July 28, Harris

---

[1] Jackson also included a retaliation claim in his complaint, which the court resolved against him when granting summary judgment.   Because Jackson does not challenge that decision on appeal, any issue in this respect is abandoned.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680–81 (11th Cir. 2014) (holding that a legal claim or argument that is not plainly and prominently raised in an initial brief is deemed abandoned).

2

returned to the medical center because the rash had spread.  Harris told the medical center employee that he had not been moved away from the insulation, so the medical center employee asked Jackson's supervisor, Shelby Hill, to move Harris away from insulation.  Hill indicated that he would speak with Jackson about moving Harris away from the insulation.  On August 10, Harris again reported to the medical center employee that he still had not been moved.

The second incident involved Lamontre Spivey.[2] Spivey experienced nausea and dizziness during the night shift on July 27. He sought treatment in the medical center but found that it was closed.  Spivey then went to Jackson's office and told him his symptoms. Jackson sat him down, gave him some water and offered him a break.  After 10 to 15 minutes, Spivey returned to work. Jackson offered Spivey a longer break but Spivey refused.

After returning to the line, Spivey vomited. He again sought care from the medical center, which was still closed.  Spivey went to his truck, and after vomiting again, drove himself to the hospital where he was diagnosed with double kidney failure.[3]  Hill notified his supervisor, Jerry Rowland, of the Spivey incident in a nightly email summarizing the night shift's events.

---

[2] Jackson testified at his deposition that Spivey had reported hand cramping and had gone to the medical department, but it was closed.

[3] Jackson admitted that he had not known that Spivey left work that day.

3

The third incident involved Michael Jackson.  Michael Jackson sustained a cut on his thigh. While on his way to the medical department to get treatment for a cut on his leg, "Wayne Jackson said 'that little thing?' and told [him] to go back to work."  When Michael Jackson went to the medical center, he told the medical center employee that Wayne Jackson and another manager had discouraged him from seeking care.  When Rowland investigated this claim, a medical employee told Rowland that Michael Jackson was upset because he had a cut on his leg that he wanted checked by medical staff, but Wayne Jackson had told him that he did not need to go to medical and should get back to work.  During the internal investigation, Jackson and the other manager said they had been kidding when they discouraged him from seeking care.

Blue Bird's Senior Manager of Health and Environmental Safety, Rena Hart, investigated each incident.  Her investigation report noted that medical employees had brought her other reports regarding Jackson's treatment of employees' medical issues.  Based on her investigation, she ultimately recommended to Michael McCurdy, Blue Bird's director of human resources ("HR"), that Jackson be terminated. McCurdy agreed and accepted her recommendation.

After McCurdy accepted the recommendation to terminate Jackson, Jackson sent an email to Rowland requesting a meeting with Rowland, Hill, and an HR representative to discuss the medical allegations against him.  Because McCurdy

4

had agreed with Hart's recommendation, he took the proposed meeting as an opportunity to discuss the medical situations and to carry out the termination. During the meeting, McCurdy warned Jackson that his job was in jeopardy based on the medical allegations and asked for his two-weeks' notice. Jackson responded that he would let McCurdy know when he would give his two-weeks' notice.

Two days after the meeting, Hill told Jackson to go to Rowland's office where Rowland asked him whether he intended to work over Labor Day weekend as scheduled.[4] Jackson stated that he would try, and Rowland responded that trying was not good enough and "told him to go ahead and get an early start then to the weekend."[5]

Following this incident, Jackson requested and received FMLA leave from September 5 through October 3, 2016, and then used vacation time to extend his leave to October 10. During this period, Jackson filed formal, internal complaints alleging discrimination and retaliation. Philomena Washington, a human resources specialist, was assigned to investigate his complaints and she directed Jackson to remain at home during the investigation. Washington ultimately concluded that

---

[4] When Hill told Rowland that Jackson might not be working over Labor Day, Rowland told Hill to ask Jackson about it because Jackson was scheduled to work that weekend.

[5] Rowland testified that he had spoken with McCurdy in HR, and "HR said that if [Jackson] refused to work, that we should send him home."

Jackson's allegations were meritless.  Blue Bird terminated Jackson on October 24, 2016, for poor job performance.

In 2017, Jackson sued Blue Bird, alleging, in part, racial discrimination in discipline, in violation of Title VII.   Blue Bird filed a motion for summary judgment, which the district court granted after finding that Jackson had not established a prima facie case of disparate treatment.  Jackson timely appealed.

## II.    STANDARD OF REVIEW

We review "de novo a district court's grant of summary judgment, applying the same legal standards as the district court."  Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000).  The party seeking summary judgment must show that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We will not make credibility determinations or weigh the evidence because summary judgment is only proper where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1311 (11th Cir. 2001).  "In order to survive summary judgment, a plaintiff alleging intentional discrimination must present sufficient facts to permit a jury to rule in [his] favor."  Lewis v. City of Union City, Ga., 918 F.3d 1213, 1220 (11th Cir. 2019) (en banc).

### III.    DISCUSSION

Title VII prohibits employers from firing, or intentionally discriminating against, an employee "because of" his race.  See 42 U.S.C. § 2000e-2(a)(1).  A plaintiff bears the burden of proving discrimination by a preponderance of the evidence.  See Crawford v. Carroll, 529 F.3d 961, 975 (11th Cir. 2008).

Because Jackson presents circumstantial evidence of discrimination, we apply the McDonnell Douglas burden-shifting framework to analyze his claim. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Under this framework, Jackson bears the initial burden to establish a prima facie case of race discrimination.  If we find that Jackson has established a prima facie case of discrimination, a presumption of discrimination arises in his favor and Blue Bird must articulate legitimate, nondiscriminatory reasons for its conduct.  Id. at 802–03.  If Blue Bird articulates such reasons, Jackson must then show that the Blue Bird's articulated reasons were merely pretext for the true discriminatory motive. Id. at 804.

A Title VII plaintiff may establish a prima facie case of discrimination when he shows, by a preponderance of the evidence, that he (1) is a member of a protected class; (2) was qualified for the position he held; (3) suffered an adverse employment action; and (4) was treated less favorably than a similarly-situated

employee outside the protected class.[6]  Flowers v. Troup Cty., 803 F.3d 1327, 1336 (11th Cir. 2015) (quoting Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003)).

Here, only the third and fourth prima facie prongs are at issue. Jackson argues that the district court erred when it determined that he had not established a prima facie case because: (1) Blue Bird fired him, which was an adverse employment action; and (2) he identified a valid comparator employee who was treated more favorably, Shelby Hill.

With regard to the third prima facie prong—proving an adverse employment action—"an employee must show a serious and material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001).  Jackson argues that the district court erred in finding that he did not raise his termination as an adverse employment action until he was opposing Blue Bird's motion for summary judgment and, as a result, in declining to consider his termination for the purposes of his disparate treatment claim.

---

[6] In this case, Jackson has attempted to establish a prima face case only in this manner.  For example, he has not attempted to present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker," an alternative manner noted in our caselaw.  Silverman v. Bd. of Educ., 637 F.3d 729, 734 (11th Cir. 2011).

8

Jackson is correct.[7] Blue Bird conceded that it fired Jackson for preventing employees from going to the plant's medical staff and that Jackson's termination was an adverse employment action.  A review of Jackson's complaint reveals that he did, in fact, mention his termination in his Title VII disparate treatment allegations.[8]  Because a termination is an adverse employment action, Jackson has established the first three elements of his prima facie case.  See Davis, 245 F.3d at 1239; see also 42 U.S.C. § 2000e-2(a)(1).

We now turn to the fourth and final element of the prima facie case Jackson sought to establish: whether Jackson adequately showed that Blue Bird treated "similarly situated" employees outside his class more favorably than it treated him. For Jackson to survive a motion for summary judgment, he must have demonstrated the existence of a genuine dispute of material fact as to the fourth prong of the McDonnell Douglas analysis.  This he did not do.

"A plaintiff asserting an intentional-discrimination claim under McDonnell Douglas must demonstrate that [he and his] proffered comparators were 'similarly

---

[7] Although the district court's finding was erroneous, affirmance is nevertheless appropriate for the reasons discussed.  See Kernel Records Oy v. Mosley, 694 F.3d 1294, 1309 (11th Cir. 2012) (explaining that we may affirm the judgment of the district court on any ground supported by the record).

[8] Jackson also argues that the district court erred in finding that he did not raise his termination as an adverse employment action until he was opposing Blue Bird's motion for summary judgment and, as a result, declining to consider his termination for the purposes of his disparate treatment claim.  Although we will assume that the court's finding was erroneous, affirmance is nevertheless appropriate for the reasons already discussed.  See Kernel Records, 694 F.3d at 1309 (explaining that we may affirm the judgment of the district court on any ground supported by the record).

situated in all material respects.'" Lewis, 918 F.3d at 1218. It is not "necessary for a plaintiff to prove purely formal similarities" like holding "precisely the same [job] title." Id. at 1227. "Nor will minor differences in job function disqualify a would-be comparator." Id. However, we expect that a similarly situated comparator will ordinarily fall "under the jurisdiction of the same supervisor as the plaintiff." Id. at 1227–28. In other words, a valid comparator must "be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished.'" Id. at 1228 (citing Young v. United Parcel Serv., Inc., 135 S. Ct. 1338, 1355 (2015)).

Jackson argues that the district court erred in finding that he failed to identify a valid comparator because he identified Shelby Hill (a Caucasian man) as a valid comparator.[9] Jackson argues that Hill was a valid comparator because he and Jackson had supervisory roles with overlapping duties, and they were both involved in two incidents Blue Bird cited for Jackson's termination.

We find that Hill is not a valid comparator,[10] even assuming without deciding that Hill, as Jackson's direct supervisor, could be a valid comparator for Jackson on this record. We expect a similarly situated comparator to "have

---

[9] Jackson does not challenge the district court's determination that Rowland, the night shift Plant Manager, was not a valid comparator. Because Jackson does not challenge that on appeal, any issue in this respect is abandoned. See Sapuppo, 739 F.3d at 680–81.

[10] Blue Bird argues that Hill was not a similarly situated employee because he was the plant's only night shift manager, whereas Jackson was one of ten line shift supervisors.

10

engaged in the same basic conduct (or misconduct) as the plaintiff" and to "share the plaintiff's employment or disciplinary history." Id. at 1227, 1228. Jackson argues that Rowland's decision to blame him for the medical incidents and not Hill was disparate treatment in violation of Title VII because "Hill shared comparable responsibilities regarding employee medical concerns with Jackson." In particular, he alleges that: (1) both Hill and Jackson were contacted when it became clear that Spivey was seriously ill, and (2) Hill failed to move Harris due to his rash but only Jackson was punished. Because Hill's conduct mirrored Jackson's in the two most serious incidents but Hill was not disciplined, Jackson insists that Hill is a valid comparator from whom disparate treatment can be inferred.

The record indicates otherwise. With respect to the three medical incidents that formed the basis for Jackson's termination, Hill had only passing involvement in the first two incidents—namely, those involving Harris and Spivey. Hill was informed of Harris's rash on July 28 by a Blue Bird medical department employee, who asked Hill to move Harris away from the insulation that was causing the rash. Hill said he would speak to Jackson about moving Harris, but the record does not reflect whether Hill ever did so. And Hill had even less involvement in the Spivey incident; he was merely responsible for notifying Rowland about the Spivey incident in a nightly recap of the shift's events.

11

We cannot say that the conduct for which Jackson was held accountable appears to be the same basic conduct in which Hill is alleged to have engaged. Even if we assume that Hill failed to talk to Jackson about moving Harris, Jackson still ignored earlier instructions to reassign an employee that came directly from the medical office.  Jackson allowed a dehydrated employee to return to work; Hill did not.  And Hill was not involved *at all* with the incident in which Wayne Jackson told Michael Jackson not to obtain medical treatment.  Overall, Hill's limited involvement in two of the three medical incidents that resulted in Jackson's termination does not persuade us that Hill "engage[d] in the same basic conduct (misconduct)" as Jackson.

In conclusion, because Jackson has failed to identify a comparator who is "similarly situated in all material respects" but received different treatment, there is no genuine dispute of material fact as to the fourth prong of the McDonnell Douglas analysis. Jackson has thus failed to establish a prima facie case of discrimination.

Because we find that Jackson has not established a prima facie case of discrimination, we need not apply McDonnell Douglas's presumption of discrimination in his favor.  411 U.S. at 802–03. We note, however, that Blue Bird has articulated a legitimate nondiscriminatory reason for terminating Jackson's employment: he was fired because he acted inappropriately regarding

12

subordinates' medical situations.  Yet Jackson has failed to rebut Blue Bird's explanation and demonstrate that the reasons given for Blue Bird's actions were pretext for race discrimination.  See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (holding that a legitimate nondiscriminatory reason proffered by employer is not "pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason") (citation omitted).  Jackson contends that Blue Bird's reasons for terminating him were pretext because it provided no records of Hart's investigation or recommendation and did not explain why it held him at fault for the employees' medical incidents.  But these arguments do not rebut, head-on, the legitimate and nondiscriminatory reason proffered by Blue Bird. To show pretext, an employee must demonstrate "such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence."  McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008) (quoting Thomas v. Cooper Lighting, 506 F.3d 1364, 1375 (11th Cir. 2008)).  Moreover, Jackson does not point to anything in the record that shows Blue Bird's proffered explanation was false or that racial discrimination was the real reason driving its decision to terminate him.

On appeal, Jackson's failure to establish pretext is as fatal as his failure to establish a prima facie case.  See Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230,

13

1236, 1236 n. 5 (11th Cir. 2004) (concluding that the district court erred in concluding the plaintiff had not established a prima facie case, but summary judgment was proper anyway because, although not addressed by the district court, the record showed that the plaintiff had failed to establish pretext).  Even if Jackson had established a prima facie case of discrimination, we would nevertheless affirm the district court's grant of summary judgment in favor of Blue Bird because the record clearly demonstrates that Jackson failed to establish pretext.

Accordingly, the district court's decision is

**AFFIRMED.**

14